# EXHIBIT D

AURORA CITY ATTORNEY
@ MJC

AURORA MUNICIPAL COURT
14999 East Alameda Parkway
Aurora, Colorado 80012

2007 JAN -5  PM 12: 05

THE PEOPLE OF THE STATE OF
COLORADO AND THE CITY OF AURORA

vs.

LOREE RICE,
Defendant

Summons No. J-03041

For the People:

GEORGE KOUMANTAKIS, and
ANGELA GARCIA,
Assistant City Attorneys
14999 East Alameda Parkway
Aurora, Colorado  80012
Phone:   303-739-7810
Fax:     303-739-7832
Atty Reg. #34857
         #35690

For the Defendant:

DAVID LANE,
Attorney at Law
1543 Champa Street  Suite 400
Denver, Colorado 80202-2981
Phone:   303-571-1000
Fax:     303-571-1001
Atty Reg. #16422

REPORTER'S TRANSCRIPT

Whereupon, the hearing in this matter, commenced in
Division IV of the Aurora Municipal Court, City of Aurora,
County of Arapahoe, State of Colorado, on Monday, November 27,
2006, before the HONORABLE SHAWN P. DAY, Municipal Court Judge.

<u>INDEX</u>

<u>PAGE</u>

<u>DEFENSE WITNESS</u>:

    LOREE MCCORMICK-RICE:
     Direct Examination by Mr. Lane          12
     Voir Dire Examination by Mr. Koumantakis   60
     Direct Examination continued by Mr. Lane  61


REPORTER'S CERTIFCATE:                  66

EXHIBITS:  DVD and Photos, returned to Mr. Lane
           at end of hearing.

3

1          MONDAY, NOVEMBER 27, 2006

2              (WHEREUPON the following was had and recorded in

3      open court, to wit:)

4              THE COURT:  Good afternoon.

5              MR. KOUMANTAKIS:  Good afternoon.

6              THE COURT:  Call the case of People v. Loree

7      Rice, J-03041.  Matter comes before the Court scheduled for

8      a motions hearing.  If I could have the parties enter their

9      appearances.

10             MR. KOUMANTAKIS:  George Koumantakis on behalf of

11     the People, Your Honor.

12             MS. GARCIA:  Angela Garcia for the City, Your

13     Honor.

14             MR. LANE:  Good afternoon, Your Honor, David Lane

15     on behalf of Loree Rice who is present before the Court, as

16     well as Cassidy Rice.

17             THE COURT:  Good afternoon.  All right.  Several

18     motions have been filed.  Let's deal with -- there was a

19     response to the defense motion for discovery.  I don't show

20     that there was a discovery motion filed, was there,

21     Mr. Lane?

22             MR. LANE:  There was, Your Honor.  I sought

23     discovery of all 911 dispatch tapes, and that was mailed to

24     the People and the Court on the same day.  So I don't know

25     why the Court doesn't have a copy in the file.

1             LOREE MCCORMICK-RICE,

2    called as a witness by the defense, having been duly sworn,

3    testified as follows:

4                 DIRECT EXAMINATION

5    BY MR. LANE:

6         Q    Good afternoon, Ms. Rice.

7         A    Good afternoon.

8         Q    You are the defendant, but for the record, would

9    you state your name, spell your name for the record,

10   please.

11        A    Loree, L-O-R-E-E, McCormick-Rice;

12   M-C-C-O-R-M-I-C-K-hyphen-R-I-C-E.

13        Q    I'd like to ask you a few questions about your

14   background.  How old are you, first of all?

15        A    51.

16        Q    And where are you from?

17        A    (No verbal response.)

18        Q    This is not a trick question.

19        A    Well, I've done quite a bit of traveling, so I

20   would say I was born in Oklahoma, but I lived in several

21   states.

22        Q    And are you employed?

23        A    No.

24        Q    Have you been employed?

25        A    Yes.

16

1      A      Because I have a handicap placard, and I obtained

2    one because of my medical condition.

3      Q      So you were legally parked?

4      A      Yes.

5      Q      When you were legally parked and you were

6    approaching the van, continue from that point.   What

7    happened?

8      A      There was an officer wearing a dark blue uniform,

9    had his gear on, and he was coming from the opposite

10   direction.   And when I unlocked my car, using the remote

11   control, my lights flashed and he said, "Is this your car?"

12     Q      Let me stop you for a second.   When you say an

13   officer, did you recognize him?   Had you ever seen him

14   before?

15     A      No.

16     Q      Since you've been to court, could you recognize

17   him as Officer DeShazer?

18     A      Yes.

19     Q      Was he wearing an Aurora Police Department

20   standard issued uniform?

21            MR. KOUMANTAKIS:   Your Honor, I've let this go

22   on, I'll object to leading.

23            MR. LANE:   Judge, I don't think those are

24   foundational type questions.

25            THE COURT:   Overruled.

17

1    Q    (By Mr. Lane)   Was he wearing a standard issue

2   Aurora Police Department uniform?

3    A    Yes.

4    Q    Did you recognize him as an Aurora police officer

5   at that point?

6    A    Yes.

7    Q    So your lights flash when you hit the open door

8   button.   What happened then?

9    A    He stopped and asked me, he looked at my vehicle,

10  and he looked at me, and he said, "Is this your vehicle?"

11  And I said, "Yes."   And he said, "Where is your handicap

12  parking placard?"   And I said, "Right there," pointing to

13  it as I said, "Right there."

14   Q    Where is right there?

15   A    In the rearview mirror.

16   Q    Hanging from it?

17   A    Yes.

18   Q    Were you at the back of the car with Cassidy at

19  that point?

20   A    Yes.

21   Q    Could you see if from where you were?

22   A    Yes.

23   Q    So you point out the placard.   What happened

24  then?

25   A    He said, "I don't see it," and I go, "It's right

1    to help us.  DeShazer was kicking Cassidy.  He kicked her,

2    and the guy right there in the blue.

3         Q    The head clerk?

4         A    Cassidy was in handcuffs and he kicked her too.

5         Q    Mr. Reddick?

6         A    Yes.

7         Q    You're talking about the gentleman in the front

8    row here with the little white paper, Mr. Reddick?

9         A    Hmm-hmm, he kicked her.  And then people were

10   going -- people were going, "Leave them alone, leave them

11   alone.  That shit ain't right."  And there were a lot of

12   people yelling it wasn't right.  And then there was someone

13   that yelled, "He called them fucking niggers, now you want

14   to beat them?"  And then DeShazer called for backup.

15   Because the people -- when he told the people to leave,

16   they weren't leaving, and he said, "If you don't leave, the

17   same is going to happen to you."  And they were yelling and

18   screaming and yelling and screaming.  And then when backup

19   got there, I was already laying down on the front seat of

20   my car.

21        And when backup got there, DeShazer drug me out

22   of the car and threw me to the ground, handcuffed me and

23   started kicking me.  And he stepped on my back.  And after

24   they took me to the other police car, there was like

25   several police cars that were there, and the one lady goes

## REPORTER'S CERTIFICATE

I hereby certify that the foregoing is a true and accurate transcription of my stenograph notes taken of the proceedings held at the time and date set forth, taken in my capacity as official court reporter for the City of Aurora, Counties of Adams and Arapahoe, State of Colorado.

Dated this ___5th___ day of ___January___, 2007.

_Renee White_

Renee White, R.P.R.

# EXHIBIT E

1           IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF COLORADO

2

3

    Civil Action No. 07-cv-00355-RPM-MEH

4

5 _____

6

    LOREE MC CORMICK-RICE; CASSIDY RICE, through her

7     next friend Loree McCormick-Rice

8

    Plaintiffs;

9

10     v.

11

    CHARLES DESHAZER, in his official and individual

12     capacity; DILLON COMPANIES, INC., d/b/a KING
    SOOPERS, INC., a Kansas corporation, and ERNEST

13     SANDS

14

    Defendants.

15

16 _____

17

18

19

            DEPOSITION OF CASSIDY S. RICE

20

21             Monday, March 24, 2008

22

23

    Pursuant to Notice taken on behalf of the

24     Defendants at 15151 East Alameda Parkway,
    Suite 5300, Aurora, Colorado, at 9:18 AM before

25     Martha Loomis, Certified Shorthand Reporter and
    Colorado Notary Public.

---

**Page 2**

APPEARANCES:

For Plaintiffs:
   QUSAIR MOHAMEDBHAI, Attorney at law
   Killmer Lane & Newman, LLP
   1543 Champa Street, Suite 400
   Denver, Colorado  80202
   303.571.1000

For City of Aurora:
   PETER RUBEN MORALES, Attorney at law
   City of Aurora City Attorney
   15151 East Alameda Parkway, 5th Floor
   Aurora, Colorado  80012
   303.739.7030

For Charles DeShazer:
   DAVID R. OSBORNE, Attorney at Law
   Hamilton & Faatz
   1600 Broadway, Suite 500
   Denver, Colorado  80202
   303.830.0500

For Ernest Sands and King Soopers:
   STEPHEN HIGGINS, Attorney at Law
   JIM M. MESECK, Attorney at Law
   White & Steele, PC
   950 Seventeenth Street, Suite 2100
   Denver, Colorado  80202
   303.296.2828

Also present:
   Loree McCormick-Rice;
   Lt. Charles DeShazer;
   Ernest Sands

---

**Page 3**

## INDEX

| EXAMINATION | PAGE |
|---|---|
| By Mr. Morales | 4 |
| By Mr. Osborne | 101 |
| By Mr. Higgins | 179 |

DEPOSITION EXHIBITS

R   Plaintiff's Response to Defendant   6
    DeShazer's Official Capacity First
    Set of Interrogatories Request for
    Production and Request for
    Admissions Propounded to Plaintiff
    Cassidy Rice

S   Affidavit in Support of Motion for
    Temporary Restraining
    Order/injunction Pursuant to CRS   51
    14-10-1008

T   Verified Motion to Modify Parental
    Responsibility (custodial
    arrangements) or Allocation of   51
    Decision-making Responsibility

U   Juvenile Detention Facility   144
    Document, C. Rice

V   Juvenile Detention Facility   144
    Document, C. Rice

W   Drawing of incident drawn by C. Rice
    191
    (Retained by Mr. Morales)

---

**Page 4**

1   WHEREUPON, the following proceedings were
2   taken pursuant to the Federal Rules of Civil
3   Procedure.
4          CASSIDY RICE,
5    Having been duly sworn to state the whole truth,
6   testified as follows
7          EXAMINATION
8   BY MR. MORALES:
9      Q.   Let me start over.  We have Zach coming
10   and I'm in a hurry.
11         As I said earlier I'm Peter Morales and I
12   represent the City of Aurora in the lawsuit known
13   as Loree McCormick-Rice and Cassidy Rice versus
14   Charles DeShazer, et al.
15         Would you please state your full name for
16   the record?
17      A.   Cassidy Symone Rice.
18      Q.   And how do you spell Symone?
19      A.   S-y-m-o-n-e.
20      Q.   And you are in fact, along with your
21   mother, a plaintiff in that lawsuit I just
22   described; is that correct?
23      A.   Yes.
24      Q.   And that lawsuit involves an incident
25   which took place on June 17, 2006, correct?

---

**Page 5**

1      A.   Correct.
2      Q.   Do you still live presently with your
3   mother?
4      A.   Yes.
5      Q.   And what is your age presently?
6      A.   Fourteen.
7      Q.   All right.  Is there anything that's
8   preventing you from answering my questions today
9   as truthfully and fully as you can?
10      A.   No.
11      Q.   You're not on any medications of any
12   kind?
13      A.   No.
14      Q.   What did you do to prepare for the
15   deposition today?
16      A.   Nothing.
17      Q.   You did nothing?
18      A.   I came in to tell the truth of what
19   happened to my mom and I that night.
20      Q.   Did you review any documents?
21      A.   No.
22      Q.   Did you speak with your mother?
23      A.   No.
24      Q.   So in order to prepare for the deposition
25   today, which just began at 9:23 or so, you have

186

1    to sit up that's when DeShazer pushed me back
2    down.
3        Q.   Mr. Sands didn't kick you at that point,
4    did he?
5        A.   No, he didn't.
6        Q.   Just that one kick?
7        A.   Yes.
8        Q.   And you don't see it in the video.  The
9    kick that you've shown me is maybe -- the kick is
10   about eight inches.  Would that be about right?
11       A.   Yes, 'cause here's DeShazer.  I'm right
12   here on the ground.  This is him like that.
13       Q.   You just showed me a kick about eight
14   inches?
15       A.   Yes.
16       Q.   Okay.  Let's look at the video and you
17   tell me.  Say, That's it.  Right there is where
18   they took part of it out.
19            Cassidy, has the kick already occurred?
20       A.   Oh, yes.
21       Q.   I'm sorry.
22       A.   I thought we were going --
23       Q.   I'll go back.  I want you to tell me
24   where the kick was.
25       A.   It was when he was running up and

187

1    approaching him.  That's when I was between the
2    both cars.
3        Q.   Let me go back then.  It was right
4    when --
5        A.   Yeah.
6        Q.   Here they go.  They are running down.
7    You tell me just right at the point that you think
8    this has been edited and he kicked you.
9        A.   You see when Jeff gets in line with him
10   for a little bit?  You might have to rewind it.
11       Q.   It's already happened?
12       A.   Yes.  When he gets in line.  Okay.  You
13   can go forward.  Right when they both get lined up
14   is when it happens 'cause it's real hard to see
15   his foot.  Right when they get lined up is where
16   it happens.  It's like a quick second right there.
17       Q.   Right there?
18       A.   Right there, 'cause they are lined up.
19       Q.   That's where he came over and he kicked
20   you?
21       A.   Yes.
22       Q.   That's at 21:50:45.  And did you get a
23   bruise in your ribs?
24       A.   No.
25       Q.   You don't know if he tripped?  Did you

188

1    actually see him look at you and kick you?
2        A.   I didn't see him look at me.
3        Q.   He might have tripped and kicked you
4    accidentally.  Could that have happened?
5        A.   No, because he was already going back.
6    He was already going out of King Soopers to
7    DeShazer's car telling him what was going on so I
8    don't think that was a trip or an accidental kick.
9        Q.   Did you actually see the kick?  Were you
10   looking at him when he kicked you?
11       A.   I saw the navy blue -- it was a light
12   blue leg.
13       Q.   Light blue leg?
14       A.   Yes, 'cause King Soopers has a light blue
15   uniform.  And he kicked me right there on my side.
16       Q.   Okay.  And did you see his face?
17       A.   No, because DeShazer had my -- like after
18   when I saw -- when I saw -- this is Ernie Sands
19   right here and this is me on the ground.  This is
20   his foot, his light blue foot like that.  And he
21   kicks me.
22       Q.   My question is, did you see Mr. Sands'
23   face just before he kicked you?
24       A.   I did not see his face.
25       Q.   All you saw was some blue pants?

189

1        A.   Yes.
2        Q.   Because they were blue pants you assumed
3    it was Mr. Sands?
4        A.   Yes, I do.
5        Q.   And you really don't know whether he
6    kicked you or tripped?
7        A.   I don't think he tripped because he was
8    already going back and forth.  He was going out of
9    King Soopers to a navy blue car telling them
10   information.
11       Q.   Let me ask you.  If a police officer
12   asked you to help and he was trying to arrest
13   somebody would you in fact help a police officer?
14       A.   No, I wouldn't.
15       Q.   Would you have done it, helped a police
16   officer before this incident if they had asked
17   you?
18       A.   No.
19       Q.   Why not?
20       A.   Because what -- whatever they are dealing
21   with isn't my problem.
22       Q.   Okay.  So if a police officer says, Hey,
23   could you help me over here, you would not help.
24   You would stay out of it, right?
25       A.   Yes, 'cause it might endanger my life

190

1  also.
2      Q.   Mr. Sands never pushed you though, did
3  he?
4      A.   No, he never pushed me.
5      Q.   Did Mr. Sands ever say the words FN or
6  the N word to you ever?
7      A.   No.  It was just DeShazer that --
8      Q.   So Mr. Sands never said a racial epithet
9  to you?
10     A.   Not to my knowledge.
11     Q.   When you were in the parking lot getting
12 a ticket, or when your mom was about to get a
13 ticket before this whole incident occurred, did
14 you know this person was an Aurora police officer?
15     A.   Yes, because I saw him in the uniform.  I
16 think they have that little symbol right there on
17 their arm that says Aurora Police.
18     Q.   So you know that person was an Aurora
19 police officer?
20     A.   Yes.  Plus when he was in the light you
21 could see the uniform.
22     Q.   Pretty clear?
23     A.   Yes.
24     Q.   What I'd like to have you do --
25         MR. HIGGINS:  We'll mark this.

191

1         (Exhibit W.)
2         (BY MR. HIGGINS)  Q.  I'm going to hand
3  you a piece of paper.  It's Exhibit W.  I want
4  you to draw a rectangle.  I'm going to draw where
5  you were when Officer DeShazer was talking to you
6  or your mom about the ticket eventually.
7      A.   He didn't mention anything about the
8  ticket when he was approaching my mom's car.
9      Q.   Okay.  What I want to do is I want to
10 know where you were when he was issuing these
11 racial statements to you.
12     A.   Okay.
13     Q.   Okay?  Why don't you draw where the
14 store is and where your car was.  Just draw.
15         Now, you've drawn a rectangle?
16     A.   That's the car.
17     Q.   That's your car?
18     A.   Yes.
19     Q.   Okay.  Where were you sitting?
20     A.   I wasn't sitting.
21     Q.   Were you outside the car?
22     A.   Yes, because I was putting the groceries
23 away.
24     Q.   Why don't you put X where you were.  At
25 some point the officer came and started talking to

192

1  your mom about the --
2      A.   The handicap?
3      Q.   About the handicap, correct?
4      A.   Correct.
5      Q.   Where were you standing when they were
6  talking about that?
7      A.   I was still standing right there.
8      Q.   On the other side of the car?
9      A.   Yes.
10     Q.   Put an M for your mom, would you?  And
11 put a D for DeShazer.
12         During this time do you know where the
13 security guards were?  The King Soopers security
14 guards?
15     A.   Did I know who they were?
16     Q.   Do you know where they were at the time
17 that Officer DeShazer was talking to your mom?
18     A.   No, I did not.
19     Q.   Okay.  Do you know what King Soopers'
20 security guard uniforms look like?
21     A.   Yes.
22     Q.   What are they?
23     A.   They are light blue, and then they
24 have -- I don't know the security name but they
25 have it on the side out here and also right here,

193

1  and they have a black belt on.
2      Q.   And they are clearly different than the
3  Aurora police uniforms?
4      A.   Yes.  They are light blue and the Aurora
5  police is navy blue.
6      Q.   You had this conversation, or your mom
7  had a conversation with this officer?
8      A.   Yes.
9      Q.   And he made a derogatory remark to her?
10     A.   Yes.  Do you want me to draw where he
11 made that remark?
12     Q.   Pardon me?
13     A.   Do you want me to draw where he made the
14 remark?
15     Q.   Yes.  Where did he make the remark?
16     A.   There's another car right here.
17     Q.   Is that right next to you?
18     A.   Yes.
19     Q.   Okay.
20     A.   Then here's the tall security guard and
21 here's DeShazer.
22     Q.   And how far away from them were you?
23 Like how many feet do you think?  As big as this
24 room?
25     A.   No.  Probably about -- say probably about

194

```
 1  five feet.
 2      Q.  Five feet from you?  I'm five feet away
 3  from you now.  This is a five-foot width table.
 4      A.  No.  About eight then; eight to ten feet.
 5      Q.  Mr. DeShazer had his back to you when he
 6  made this comment?
 7      A.  No.  He was facing toward us.
 8      Q.  Facing toward you?
 9      A.  Yes.
10      Q.  This King Soopers person never made,
11  issued any, or stated any racial epithet, did he?
12  The only thing he did, you said he smiled or
13  laughed.  Isn't that correct?
14      A.  Yes.
15      Q.  Okay.  And did you yell back to him and
16  say, Hey, this guy just said this about my mom?
17      A.  No.  I didn't say anything to him.
18      Q.  Did your mom say anything at that point?
19      A.  My mom approached DeShazer and said, Did
20  you just call us -- did you just call my daughter
21  and I out of our names?  He said, Yes.  The
22  security guard and him both started laughing then
23  again.
24          And my mom got back in the car and we
25  drove off going towards Taco Bell.  I said, Mom,
```

195

```
 1  we're not going to go and report him about that?
 2  And she said, Cass, you know what?  You're right.
 3  We are.
 4          That's when we came back.
 5      Q.  You came back.  Was your mom upset?
 6      A.  Not really; not a -- not a lot.  But she
 7  was somewhat.
 8      Q.  When you came into the store it appeared
 9  from the video that your mom sure was really
10  upset.  Would you agree with that?
11      A.  Yes.
12      Q.  Were you upset too?
13      A.  Yes, I was, because I just got called out
14  of my name by an Aurora police officer.
15      Q.  What if this officer had said this and he
16  in fact apologized and said, I'm really sorry.  I
17  didn't mean to say that.  Would you have gone on
18  your way and just forgotten about this?
19      A.  I would have accepted -- I would have
20  accept his apology, yes.  I would have accept his
21  apology.
22      Q.  Did you ever ask the officer to
23  apologize?
24      A.  No, because I haven't seen him ever since
25  the beating we took.
```

196

```
 1      Q.  And I guess Mr. Sands, you wouldn't ask
 2  for his apology because he never made those
 3  statements to you, did he?
 4      A.  No.  I would just ask him to apologize
 5  for kicking me.
 6      Q.  For kicking you?
 7      A.  Yes.
 8      Q.  And you've been back to this King Soopers
 9  store a number of times with your mom protesting
10  the store, haven't you?
11      A.  Yes.
12      Q.  And you even have been on the bullhorn a
13  number of times stating that you want Mr. Sands
14  fired; isn't that right?
15      A.  Yes.
16      Q.  Do you think that's fair?
17      A.  Well, yes.
18      Q.  You think it's fair because of this blue
19  uniform you saw and an eight-inch kick, you think
20  that person should be fired from their job?
21      A.  Yes.
22      Q.  Okay.  And you're asking for money in
23  this case.  What kind of money would help you to
24  resolve this and get rid of this case?
25          MR. MOHAMEDBHAI:  Object to form.
```

197

```
 1          (BY MR. HIGGINS)  Q.  You can answer.
 2      A.  I'm not asking for money.  It's only
 3  justice; what's fair.
 4      Q.  What would be fair?
 5          MR. MOHAMEDBHAI:  Object to form.
 6          (BY MR. HIGGINS)  Q.  In this case to you
 7  what would be fair?  An apology from Mr. Sands?
 8  From Officer DeShazer?  From King Soopers?
 9          MR. MOHAMEDBHAI:  Object to form.
10          (BY MR. HIGGINS)  Q.  What do you think?
11      A.  What do I think would --
12      Q.  What would make you think, I feel good.
13  This thing's over.  I'm done.
14          MR. MOHAMEDBHAI:  Object to form.
15          THE WITNESS:  I don't think anything
16  could.
17          (BY MR. HIGGINS)  Q.  Anything?
18      A.  Because that's -- what happened that
19  night, what they both did -- yes, Ernest Sands
20  kicked me but DeShazer beat me.  That scarred me
21  for life and a price couldn't pay for that.
22      Q.  No money can really help you out?
23      A.  Like I said --
24          MR. MOHAMEDBHAI:  Object to form.
25  Mischaracterizes her testimony.
```

218

1    What body language is that?   I'm kind of
2  at a loss to figure out what that is.  Can you
3  show me?
4    A.   When -- when a person is giving you a
5  despicable look, like -- show you an example?
6    Q.   Yes, show me.
7    A.   Like that.
8    Q.   Tuck your chin in and like that?  That's
9  a racist behavior?
10    A.   Yes, it is.
11    Q.   Like this?  That would be racial
12  behavior?
13    A.   No.  And like if you're just -- if you're
14  just staring at the person like -- and do like
15  that, you know, and roll your eyes also.
16    Q.   Roll your eyes?   Okay.
17    Mr. Sands has been in here a couple of
18  times.  You haven't seen that on him since you've
19  been here, have you?
20    A.   Because I haven't paid attention to him.
21    Q.   I have a lot of black friends.  A lot of
22  times they will call each other the N word and
23  will laugh about that.
24    Do you do that with your black friends?
25  Truthfully.

219

1    A.   No.  Because to me the N word is saying
2  that -- to my knowledge that you can never be
3  anything and that you're not smart and that you're
4  not intelligent.
5    So therefore I don't use it and I don't
6  like to be called that because I know I'm
7  intelligent and I'm smart.
8    Q.   I'm just asking.  I was just telling you
9  examples of my friends, my black friends that see
10  each other, they jokingly say that to each other.
11    I'm assuming you heard that with some of
12  your black friends.
13    A.   Yes.  They say it to each other but they
14  know not to call me that.
15    MR. HIGGINS:   Thank you.  That's all I
16  have.
17
18    WHEREUPON, the within proceedings were
19  adjourned at 3:54 PM on March 24, 2008
20
21
22
23
24
25

220

1
2
3    I do hereby certify that I have read the
4  foregoing deposition and that the same is a true
5  and accurate transcript of my testimony, except
6  for attached amendments, if any.
7
8  _____
     CASSIDY RICE
9
10  ( ) No changes      ( ) Amendments attached
11
12    SUBSCRIBED AND SWORN TO before me this
   ____ day of _____, 20____.
13
14
15
16
   _____
     NOTARY PUBLIC
17  Address _____
18  _____
19
    My commission expires _____
20
21
22
23
24
25

221

1    C E R T I F I C A T I O N
2
3    I, Martha Loomis, Certified Shorthand
4  Reporter, appointed to take the deposition of
5       CASSIDY RICE
6  certify that before the deposition the deponent
7  was duly sworn to testify to the truth; that the
8  deposition was taken by me on March 24, 2008, then
9  reduced to typewritten form by means of
10  computer-aided transcription; that the foregoing
11  is a true transcript of the questions asked,
12  testimony given, and proceedings had.
13    I further certify that I am not related
14  to any party herein or their counsel, and have no
15  interest in the result of this matter.
16    IN WITNESS WHEREOF, I have hereunto set
17  my hand March 30, 2008.
18
19
20  _____
21  Martha Loomis
22  Certified Shorthand Reporter
23
24
25  Proofread by D. Drake

222

```
1    Martha Loomis, CSR
     5418 South Foresthill Street
2    Littleton, Colorado  80120
     720.530.0474
3    samloomis@earthlink.net
4
     March 31, 2008
5
6    Qusair Mohamedbhai, Attorney at Law
     Killmer Lane & Newman
7    1543 Champa Street, Suite 400
     Denver, Colorado  80202
8
9    RE: Rice v Aurora
     Deposition of: CASSIDY RICE
10   Date of Deposition: March 24, 2008
11
     Enclosed is the original signature page of the
12   above deposition.  Please arrange for signature
     for the above deposition by means of your copy
13   transcript and the enclosed original signature
     page.
14
15   Also enclosed is a form of amendment for changes,
     if necessary.  After having the signature page and
16   amendment form signed please have them notarized
     and return for filing to this office within 30
17   days to comply with the statute..
18
     Thank you for your attention to this matter.
19
20   Sincerely,
21
22
     Martha Loomis, CSR
23
24
     cc: Peter Morales, Esq.
25      Stephen Higgins, Esq.
        David Osborne, Esq.
```

224

```
1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

223

```
1    Martha Loomis, CSR
     5418 South Foresthill Street
2    Littleton, Colorado  80120
     720.530.0474
3    samloomis@earthlink.net
4    March 31, 2008
5
     Peter Ruben Morales, Esq.
6    City Attorneys Office
     15151 East Alameda Parkway, 5th Floor
7    Aurora, Colorado  801012
8
9
10   Re: Rice v Aurora
     Deposition of: CASSIDY RICE
11   Date of Deposition:  March 24, 2008
12
     Enclosed is the above original transcript
13
     ____  Signed, no changes
14
     ____  Signed, with changes, copy enclosed
15
     ____  No signed, notice duly given March 31, 2008
16   Pursuant to the Federal Rules of Civil
     Procedure
17
     ____  Sent via USPS
18   ____  Hand delivered
19
20
21   cc: Qusair Mohamedbhai, Esq.
        David Osborne, Esq.
22      Stephen Higgins, Esq.
23
24
25
```

# EXHIBIT F

1

1     IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF COLORADO

2

      Civil Action No. 07-cv-00355-RPM-MEH

3

4

      _____

5

      LOREE MC CORMICK-RICE; CASSIDY RICE, through her next

6     friend Loree McCormick-Rice,

7     Plaintiffs;

8

      v.

9

10    CHARLES DESHAZER, in his official and individual
      capacity; DILLON COMPANIES, INC., d/b/a KING SOOPERS,

11    INC., a Kansas corporation, and ERNEST SANDS,

12    Defendants.

      _____

13

14

15

16

17            DEPOSITION OF LOREE MC CORMICK-RICE

18               Thursday, March 6, 2008

19

20

21

22

23

        Pursuant to Notice taken on behalf of the Defendants

24    at 15151 East Alameda Parkway, Suite 5300, Aurora,
      Colorado, at 9:18 AM before Martha Loomis, Certified

25    Shorthand Reporter and Notary Public within Colorado.

**2**

```
1   APPEARANCES:
2
3   DAVID A. LANE and QUSAIR MOHAMEDBHAI, Attorneys at
    Law, from the Law Firm of Killmer Lane & Newman, LLP,
    1543 Champa Street, Suite 400, Denver, Colorado
4   80202, appearing on behalf of the Plaintiffs.
5
    PETER RUBEN MORALES, Attorney at Law, Office of the
6   City Attorney, City of Aurora, 15151 East Alameda
    Parkway, 5th Floor, Aurora, Colorado  80012,
7   appearing on behalf of Defendant City of Aurora.
8
    DAVID R. OSBORNE, Attorney at Law, from the Law Firm
9   of Hamilton & Faatz, 1600 Broadway, Suite 500,
    Denver, Colorado  80202, appearing on behalf of
10  Defendant Lieutenant DeShazer.
11
    STEPHEN HIGGINS and JIM M. MESECK, Attorneys at Law,
12  from the Law Firm of White & Steele, PC, 950 17th
    Street, Suite 2100, Denver, Colorado  80202 appearing
13  on behalf of Defendants King Soopers, Inc. and
    Ernest Sands.
14
15
         Also Present:  Lt. Charles DeShazer;
16       Cassidy Rice; George Koumantakis.
17
18
19
20
21
22
23
24
25
```

**4**

```
1   DEPOSITION EXHIBITS (cont.)          PAGE
2   J  Video depicting subject incident    120
3
4   K  McCormick-Rice Federal Complaint    115
5
    L  Medical Records, Cassidy Rice       130
6
7   M  Map of Aurora            136
8
    N  Photographs, various subjects including  135
9      C. Rice with arm in sling
10
    O  Video, subject incident         135
11
12  P  Photograph of parking lot with Deponent
       markings               141
13
14  Q  Pamphlet with "King Soopers" Logo distributed
       at protests            227
15
16
    (Retained by Mr. Morales.)
17
18
19
20
21
22
23
24
25
```

**3**

```
1            I N D E X
2   EXAMINATION:            PAGE
3
    By Mr. Morales             5, 275
4
5   By Mr. Osborne             168
6
    By Mr. Higgins             227
7
8
    DEPOSITION EXHIBITS:
9
10  A  Plaintiffs' Response to Defendant DeShazer's
       First Set of Interrogatories        10
11
12  B  Criminal History, LM Rice         21
13
    C  Disposition Screen Report, LM Rice    21
14
15  D  Aerial Photograph, incident King Soopers and
       parking lot            29
16
17  E  Small version of Exhibit D, aerial photograph
       of King Soopers and parking lot      29
18
19  F  6-18-06 APD Memo from Jeans to McGhee
       re:  complaint on DeShazer        30
20
21  G  Body of Christ News article        36
22
    H  11-27-06 hearing transcript,  Aurora v Rice   43
23
24  I  Video depicting subject incident     93
25
```

**5**

```
1        WHEREUPON, the following proceedings
2   were taken pursuant to the Federal Rules of Civil
3   Procedure:
4        LOREE MC CORMICK-RICE,
5   having been duly sworn to state the whole truth,
6   testified as follows:
7        EXAMINATION
8   BY MR. MORALES:
9        Q.   Good morning, Ms. McCormick-Rice.  My
10  name is Peter Morales as I mentioned before.  I
11  apologize for the froginess in my voice.
12        We're about to do a deposition.  I
13  presume that you are aware you are one of the
14  plaintiffs in the case called Loree McCormick-Rice
15  and Cassidy Rice versus Charles DeShazer, Dillon
16  Companies, Inc. doing business as King Soopers, and
17  Ernie Sands.  Is that correct?
18        A.   Yes.
19        Q.   Have you ever been deposed before,
20  ma'am?
21        A.   Yes.
22        Q.   When was that?  How long ago was that?
23        A.   Probably in the '90s.
24        Q.   Okay.  I see that you're very
25  soft-spoken.  I'll ask you to speak up because the
```

234

1  somehow conspired with Officer DeShazer to assault
2  you?
3      A.    All I know -- I don't know the answer to
4  that question.
5      Q.    Knowing now, with the information you
6  have now, are you willing to retract any of your
7  claims against King Soopers or Ernie Sands?
8      A.    I don't know the answer to that question.
9      Q.    You've alleged that King Soopers has, at
10 least at this store, has racial policies that are
11 wrong.  Who is the witness that's going to prove
12 that?
13     A.    Well, there were some employees there
14 that said there were some racial issues going on.
15     Q.    You understand at the time of trial you
16 actually have to call a witness to say yes, there's a
17 racial problem?
18     A.    Yes.
19     Q.    Okay.  And who is that witness that is
20 going to come in and testify to that?
21     A.    One of them would probably -- I don't
22 know.  One of them, the girl with the blonde hair the
23 night that I reported what happened has quit King
24 Soopers because, she said, of some racial issues
25 there.

235

1      Q.    Did you talk to her?
2      A.    I haven't talked to her directly.  I
3  spoke with her daughter.
4      Q.    When did you speak to her daughter?
5      A.    At a protest several months ago.
6      Q.    At what?
7      A.    Several months ago.
8      Q.    Any other witnesses?
9      A.    No, not to my knowledge.
10     Q.    Did Mr. Sands issue any racial epithets
11 to you?
12     A.    No.
13     Q.    I've looked at the film.  I've listened
14 to you today.  There's allegations in the complaint
15 that Mr. Sands brutally beat you and your daughter.
16         Tell me about that.  How did Mr. Sands
17 brutally beat you or your daughter?
18     A.    I said DeShazer beat me and my daughter.
19 Sands, as far as I can say -- you'll have to ask
20 Cassidy.
21     Q.    Mr. Sands never touched you, did he?
22     A.    He didn't touch me to my knowledge.
23     Q.    Let me ask you.  If you saw a police
24 officer who asked you to help him while he was doing
25 an arrest would you help that officer?

236

1         MR. LANE:  Objection to form.
2         (BY MR. HIGGINS)  Would you help that
3  officer?
4      A.    Yes, depending on the situation.
5      Q.    Did you hear Officer DeShazer ask
6  Mr. Sands to help him?
7      A.    I don't recall him help -- asking him to
8  help him.
9      Q.    Are you still of the opinion that
10 Mr. Sands should be fired?
11     A.    I don't know.
12     Q.    Do you have a temper?
13     A.    Do I have a temper?
14         MR. LANE:  Objection to form
15     (BY MR. HIGGINS)  Yes.  Do you?
16     A.    Depending on what the situation is.
17     Q.    I've been here for several hours now.
18 You seemed to get pretty heated towards Mr. Osborne's
19 questions.
20     A.    Because it angers me what he did to me
21 and my daughter.
22     Q.    Okay.  You've been boycotting this King
23 Soopers store?
24     A.    Yes.
25     Q.    How many times have you boycotted this

237

1  store?
2      A.    For the last year and a half, I believe.
3      Q.    And when you're boycotting the store
4  you're trying, numerous times you've asked that Ernie
5  Sands be fired.  Is that correct?
6      A.    We've said that he should be fired, yes.
7      Q.    And you're still of that opinion?
8      A.    I don't know.  After today I don't know.
9      Q.    What I'm trying to figure out what
10 Mr. Sands did wrong in this case other than stand
11 there.  Can you tell me?
12     A.    I would like to know why Mr. Sands went
13 out to talk to the person now known -- well, after we
14 were stopped, known as Charles DeShazer in that blue
15 car several times.
16     Q.    Okay.  Now, you've told us he talked to
17 him one time.  Now you're telling us --
18     A.    I think he was probably --
19     Q.    Wait.
20     A.    -- it was more than once.
21     Q.    Let me ask the question.
22         Now Mr. Sands has gone out and talked to
23 Mr. DeShazer several times?
24     A.    It was more than once.
25     Q.    Where were you at the time he was

242

1    Q.   Let me ask you.  For you to say and
2  broadcast with a bullhorn and shouting that Mr. Sands
3  brutally beat you and your daughter is wrong, is that
4  not correct?
5        MR. LANE:  Objection, asked and
6  answered.
7    Q.   (BY MR. HIGGINS)  Can you answer that?
8    A.   I want to know why did Sands come up to
9  me and say, What of it?  What of it?  When he wasn't
10  even over there to hear what DeShazer had said to me
11  and Cassidy.
12    Q.   Mrs. McCormick-Rice, my question is
13  going to be very simple.  Did Mr. Sands brutally beat
14  you and your daughter?  I think you said no; is that
15  correct?
16    A.   He did -- I don't recall him touching
17  me.  But he touched my daughter.
18    Q.   Did he kick your daughter?
19    A.   Cassidy?
20    Q.   You can't ask.  I'm asking you.  You
21  were there.  Did he kick your daughter?
22    A.   Cassidy said he did.
23    Q.   Did you see him kick your daughter?
24    A.   No.  But everything that's on that
25  videotape that we saw, everything isn't on there.

243

1    Q.   We saw the video today.  I didn't see
2  anywhere on that video where Mr. Sands did anything
3  other than stand behind DeShazer.  Doesn't look like
4  he kicked anybody.
5        At what point did he kick her?
6    A.   I don't know.
7    Q.   So my question to you was, when you go
8  on these boycotts and you tell people that Ernie
9  Sands brutally beat you and your daughter, that is
10  not true, is it?
11    A.   I didn't say he brutally beat me and my
12  daughter.  I said that we were beat by -- kicked.  My
13  daughter was kicked and choked by Ernest Sands -- by
14  Charles DeShazer and assisted by Ernest Sands.
15    Q.   And how did Mr. Sands assist in brutally
16  beating you?
17    A.   He didn't beat me.  He put his hands on
18  Cassidy.
19    Q.   Put his hands on her now?
20    A.   Cassidy will have to tell you what he
21  did to her.
22    Q.   You don't really know, other than what
23  Cassidy told you?
24    A.   Yes.
25    Q.   Now, in addition to these boycotts you

244

1  have an e-mail address for people to complain about
2  King Soopers and Mr. DeShazer.  Is that correct?
3    A.   Yes.
4    Q.   How many e-mail accounts do you have?
5    A.   How many e-mail account do I have?
6    Q.   Yes.
7    A.   Probably three.
8    Q.   What's the one if I wanted to make a
9  complaint or find out about this complaint, what
10  e-mail address do you have about that?
11    A.   About me?  Lmac003 at comcast dot net.
12    Q.   What is it?
13    A.   About me?
14    Q.   Or where you can find out about this
15  particular case.
16    A.   You can find out about some of the
17  things that happened.  And you can also find out by
18  using copwatch.
19        MR. LANE:  Are you talking about a
20  website or an e-mail address?
21    Q.   (BY MR. HIGGINS)  A website.  I think
22  you gave me the website, right?
23    A.   You asked me for my e-mail address.
24    Q.   I don't want your e-mail address.  I
25  want a website.

245

1        If I wanted to find out, make a
2  complaint about this case or find out about this
3  case, what's the website?
4    A.   I really don't know the website.
5    Q.   You accused Mr. Sands of beating you,
6  assaulting you when you were in court before the case
7  was dismissed.
8    A.   I accused him of being part in it, yes.
9    Q.   And you accused Mr. Reddick of
10  assaulting you, right?
11    A.   I was wrong about Mr. Reddick.  I didn't
12  know the names clearly at that time.  I didn't know
13  Russ' last name.  And that's the reason why I
14  referred to him as Russ instead of Reddick because I
15  really didn't know the names.
16    Q.   You filed a complaint in federal court
17  alleging that Mr. Sands brutally beat you and your
18  daughter, and was part of the conspiracy to beat your
19  daughter.  Is that correct?
20    A.   Brutally beat me and my daughter?
21    Q.   Yes.
22    A.   He put his hands on Cassidy.
23    Q.   Put his hands on Cassidy?
24    A.   I don't recall him touching me.  And I
25  never said he touched me.

270

1  to tell Russ what was going on back there with
2  DeShazer when he was beating Cassidy and myself. And
3  he said he didn't know anything about it and that it
4  wasn't his position to handle it.
5  Q.  Who is Henrietta?
6  A.  She's one of the witnesses.
7  Q.  One of your witnesses?
8  A.  Yes.
9  Q.  Henrietta what?
10  A.  I don't know her last name. I forgot.
11  Q.  She's listed as a witness in your case?
12  A.  Yes.
13  Q.  How's Cassidy doing in school?
14  A.  She's doing better.
15  Q.  Did she do bad for a while?
16  A.  I think so.
17  Q.  When you were talking about the suicide
18  attempt, have there been suicide attempts?
19  A.  No.
20  Q.  What treatment are they giving Cassidy
21  for the suicide?
22  A.  Talking to her; telling her from the
23  Bible perspective that's not the right way; telling
24  her it will be okay and --
25  Q.  That's helping?

271

1  A.  -- telling her it wasn't her fault.
2  Q.  Henrietta, last name and contact
3  information unknown. You have no idea where she is?
4  A.  I have no idea where she is, no.
5  Q.  Who actually talked to the manager at
6  the store who said, If we talk to you we'll be
7  terminated? What's the name of that person?
8  A.  I don't remember her name. Several
9  people said that. I told her about it and so did
10  Larry. He said that wasn't exactly what he said. He
11  said that he told people not to talk about it and not
12  to report it and that was it. He didn't say
13  "terminated."
14  Q.  Well, what I need to know from you, did
15  you hear that from a King Soopers' employee? Or was
16  that someone else that heard it?
17  A.  No. I heard it from a King Soopers'
18  employee.
19  Q.  What date was that?
20  A.  Must have been about -- we went back on
21  that Monday and we went back that Tuesday evening.
22  So I think it was probably the 20th.
23  Q.  The 20th?
24  A.  Yes.
25  Q.  Three days afterwards?

272

1  A.  Yes. I think that's about right.
2  Q.  And it was a female manager you talked
3  to?
4  A.  I talked -- well, on that Monday I
5  talked to both the manager and the assistant store
6  manager, Hispanic, and I told them what happened.
7  Q.  Did you tell them you were going to sue
8  them?
9  A.  No.
10  Q.  Did you tell them you needed witnesses?
11  A.  I don't know; maybe.
12  Q.  Did they tell you anything else?
13  A.  He said that he's sorry such a thing
14  happened. And then as we were leaving as we -- the
15  Hispanic lady and I walked out the store she told me
16  that there seemed to be a lot of racism with the
17  Aurora Police Department because her niece had had
18  her arm broken by an Aurora police officer. And it
19  was -- they said it was mistaken identity.
20          And I went back to talk to her about a
21  week or two later and she was no longer there.
22  Q.  But it had nothing to do with King
23  Soopers though?
24  A.  I don't know.
25  Q.  Mr. Sands did not arrest you on the date

273

1  of the incident, did he?
2  A.  No.
3  Q.  He didn't handcuff you?
4  A.  No.
5  Q.  And he had nothing to do with the
6  charges that you were eventually charged with, did
7  he?
8  A.  I don't know.
9  Q.  On the date in court you also accused
10  him at that time of beating you, didn't you, in
11  municipal court?
12  A.  He didn't beat me. He had made contact
13  with my daughter. And I don't think I said he beat
14  me.
15  Q.  Is your daughter getting any treatment
16  right now for any physical condition?
17  A.  Not at this time.
18  Q.  Did a doctor put her on any restrictions?
19  A.  Not to my knowledge. At that time -- I
20  don't -- I don't know. I don't remember. I don't
21  remember.
22          But I do know that because of her pain
23  she had to drop out of some things that she was in.
24  Q.  Did she drop out of athletics?
25  A.  Pretty much, yes.

**282**

```
 1   you --
 2        A.   You said "public."
 3        Q.   Okay.  What are you going to do to fix
 4   that reputation of Mr. Reddick?  What are you going
 5   to do?
 6        A.   I don't know.
 7        Q.   You're not going to do anything, are
 8   you?  Because it's more convenient to play this
 9   race card and just make accusations --
10        A.   I'm not playing a race card.
11        Q.   Let me finish my question.
12             MR. LANE:  I'm going to object to the
13   question.  It's argumentative and confrontational.
14             MR. MORALES:  It goes right to bias and
15   motive and you know it.
16             MR. LANE:  You're asking a leading
17   question that assumes facts not in evidence.  You're
18   asking her more convenient --
19             MR. MORALES:  I'll change the question.
20             MR. LANE:  Okay.
21        Q.   (BY MR. MORALES)  When you made the
22   accusation against Russ Reddick in court you were
23   playing the race card, weren't you?
24        A.   No, I wasn't.
25        Q.   You admit now it was a mistake, correct?
```

**283**

```
 1        A.   I didn't know his last name.
 2        Q.   Ma'am, was it a mistake?
 3        A.   Yes.
 4        Q.   You're not going to correct it, are you?
 5        A.   I don't know how.
 6        Q.   Is that right?
 7        A.   I don't know how I'm going to correct it.
 8        Q.   That's exactly my point.  When you play
 9   the race card it's hard to correct it.
10             MR. LANE:  Object, and instruct the
11   witness not to answer the question.  It's an
12   argumentative question assuming facts not in
13   evidence.
14        Q.   (BY MR. MORALES)  You understand that
15   playing the race card could be the basis, or some
16   could believe it's the motive here?
17        A.   I don't know.  I'm not playing the race
18   card.  I'm saying what's fact.
19             And the fact is Charles DeShazer beat me
20   and my daughter and called us a fucking nigger.
21   Those are the facts.
22        Q.   Russ Reddick didn't.  And he got accused
23   of the same thing, didn't he, ma'am?
24        A.   Yes.  I mistakenly said Mr. Reddick.
25             MR. MORALES:  I don't have any further
```

**284**

```
 1   questions.
 2             MR. LANE:  We're done for the day and
 3   have to come back for Cassidy's deposition.
 4             MR. HIGGINS:  Copy.
 5             MR. LANE:  E-transcript.  That's it.
 6             MR. HIGGINS:   Exhibits.
 7
 8             WHEREUPON, the within proceedings were
 9   adjourned at 5:40 PM on March 6, 2008.
```

**285**

```
 1             I do hereby certify that I have read the
 2   foregoing deposition and that the same is a true and
 3   accurate transcript of my testimony, except for
 4   attached amendments, if any.
 5
 6   _____
            LOREE MC CORMICK-RICE
 7
 8   (  ) No changes    (  ) Amendments attached
 9
10       SUBSCRIBED AND SWORN TO before me this _____
11   day of _____, 20_____.
12
13
14   _____
            NOTARY PUBLIC
15   Address _____
         _____
16   My Commission Expires _____
```

286

1    C E R T I F I C A T I O N
2
3         I, Martha Loomis, Certified Shorthand
4    Reporter, appointed to take the deposition of
5         LOREE MC CORMICK-RICE,
6    certify that before the deposition the deponent was
7    duly sworn to testify to the truth; that the
8    deposition was taken by me on March 6, 2008, then
9    reduced to typewritten form by means of
10   computer-aided transcription; that the foregoing is a
11   true transcript of the questions asked, testimony
12   given, and proceedings had.
13        I further certify that I am not related
14   to any party herein or their counsel, and have no
15   interest in the result of this matter.
16        IN WITNESS WHEREOF, I have hereunto set
17   my hand March 14, 2008.
18
19   _____
        Martha Loomis
20      Certified Shorthand Reporter
21
22   Proofread by D. Drake
23
24
25

---

287

1    Martha Loomis, CSR
     5418 South Foresthill Street
2    Littleton, Colorado  80120
     720.530.0474
3
4    March 14, 2008
5
     David A. Lane, Esq.
6    Killmer Lane & Newman
     1543 Champa Street, Suite 400
7    Denver, Colorado  80202
     Re:  McCormick-Rice v DeShazer
8    Deposition of:  LOREE MC CORMICK-RICE
     Date of Deposition:  March 6, 2008
9
10
     Enclosed is the original signature page of the above
11   deposition.  Please arrange for signature for the
     above deposition by means of your copy transcript and
12   the enclosed original signature page.
13   Also enclosed is a form of amendment for changes, if
     necessary.  After having the signature page and
14   amendment form signed, please have them notarized and
     return for filing...
15
     _XX_  to this office within 30 days to comply
16        with the statute
17
     _____  to court on the date of trial,
18        with copies of amendments to other counsel,
           plus a copy to this office.
19
20
     Thank you for your attention to this matter.
21
22
     Sincerely,
23
     Martha Loomis, CSR
24
     cc:  Peter Ruben Morales, Esq.
25        Stephen Higgins, Esq.
           David Osborne, Esq.

---

288

1    Martha Loomis, CSR
     5418 South Foresthill Street
2    Littleton, Colorado 80120
     720.530.0474
3
4    Peter Ruben Morales, Esq.
     City Attorney, City of Aurora
5    15151 East Alameda Parkway, 5th Floor
     Aurora, Colorado 80012
6
7    Re:  McCormick-Rice v DeShazer
     Deposition of:  LOREE MC CORMICK-RICE
8    Date of Deposition:  March 6, 2008
9    Enclosed is the above original transcript.
10   ____ Signed, no changes
11   ____ signed, with changes, copy enclosed
12   ____ not signed, notice duly given
        March 14, 2008, pursuant to the
        Rules of Civil Procedure
13   ____ signature not required
14
15
16   ____ sent via USPS
17   _XX_ hand delivered
18
19   cc:  David A. Lane, Esq.
20        David Osborne, Esq.
           Stephen Higgins, Esq.
21
22
23
24
25

73 (Pages 286 to 288)