2003 U.S. Dist. LEXIS 18469, *

None of the above factors is dispositive or controlling, and the court may evaluate other considerations that may be relevant to the determination. Greenberg v. Perkins, 845 P.2d 530, 536-37. Once a court has determined that a duty exists, the court must then consider the scope of the duty and define the applicable standard [*56] of care against which to measure the defendant's conduct. Bath Excavating, 847 P.2d at 1147.

Plaintiffs' claims that they were owed duties by the lawyers, law firms or the Bar Associations are beyond frivolous. Their claims are downright absurd.

Plaintiffs assert, for example: that the lawyers breached some ill-conceived duty to plaintiffs when the lawyers sent them letters that contained opinions about the law that plaintiffs considered incorrect; that the lawyers owed to plaintiffs a duty to ensure that plaintiffs' legal rights and needs were protected; and that the lawyers breached a duty to plaintiffs when the lawyers failed or refused to present to the lawyer disciplinary agency plaintiffs' complaints about other lawyers.

Plaintiffs' claims against James B.F. Oliphant are representative of the type of claims that they assert against lawyers. Mr. Oliphant represented the Bennetts in the early 1990's, when the zoning disputes between plaintiffs and the Bennetts first emerged. He wrote an opinion letter on behalf of the Bennetts, and his letter was mailed to plaintiffs on November 5, 1992. See FAC at 37. As a result of this letter, plaintiffs seek to sue Oliphant [*57] for fraud and deceit because he made "deceitful statements [in the letter] implying that blockading the road was legal. . . ." Id. They seek to sue him for "Nonfeasance and . . . for Breach of Implied Duty for Good Faith Performance, because he had written to Sieverdings pretending to be a legal authority, [and] because he knew Sieverdings were hurt partially because of his deceits but refused to help them." Id. at 37-38.

The lawyers in the Klauzer law firm have been sued for, among other things, "facilitating Bennetts' building in violation of the city zoning and development laws. Id. at 38. One attorney in the Klauzer firm has been sued for "Obstruction of Justice and Civil Conspiracy" for "refusing to let the Sieverdings use his properly certified copy of CITY laws on 7/27/00." Id. The remaining claims against lawyer defendants are similarly foolish.

In regard to the Bar Associations, plaintiffs have stated repeatedly that they were unable to retain a lawyer to represent them in this case, and they assert that the responsibility for their failure rests with both the Colorado Bar Association and the American Bar Association. They seek to sue the ABA, in part, [*58] for fraud and deceit "for claiming the American attorney services industry is self regulating, down playing problems with attorney misconduct, and pretending that tort actions

against attorneys for attorney fraud, abuse of process, defamation, and other intentional torts performed by an attorney in the course of business are somehow impossible." Id. at 31. They charge that the ABA is guilty of "Reckless Negligence, Nonfeasance, Malfeasance, and Misfeasance" for "interfering with the Sieverding family's right and ability to sue the lawyer defendants with the assistance of an attorney. . . ." Id. The claims against the Colorado Bar Association are similar, and similarly ridiculous.

Plaintiffs' complaints are filled with additional examples of unfounded assertions in regard to the CBA, the ABA and the lawyer defendants. Nothing would be served by attempting to list all of those examples here. Suffice it to say that plaintiffs were warned repeatedly during the status conference of January 30, 2003, that none of the lawyer defendants or the Bar Associations owed any legal duty whatsoever to plaintiffs, and that all of plaintiffs' claims in this regard were foolish and frivolous.

[*59] In several of their responses, plaintiffs argue that they can sue lawyers because a basis for such a suit is provided in a Colorado Court of Appeals decision. See Berger v. Dixon & Snow, P.C., 868 P.2d 1149 (Colo.App. 1993), cert. denied Feb. 28, 1994. In that case, the Court of Appeals stated the general rule:

> [HN18]An attorney generally has no duty to his or her client's adversary. * * * While fulfilling his or her fiduciary duty to act in the client's best interests, an attorney generally has no duty to the client's adversary and therefore is liable only for injuries caused by his or her fraudulent, malicious, or intentionally tortious conduct.

Id. at 1151, 1152, citations omitted. However, plaintiffs have stated no facts in their complaints that would cause their claims to fall within the exceptions to the general rule, that is, claims against lawyers for conduct that is "fraudulent, malicious, or intentionally tortious."

## VII. PLAINTIFFS HAVE FAILED TO DEMONSTRATE THE ABSENCE OF ABSOLUTE IMMUNITY AND QUALIFIED IMMUNITY FOR PUBLIC OFFICIALS

### 1. Judge and prosecutors have absolute immunity.

Certain of the public defendants [*60] are entitled to absolute immunity. The judge who has been sued by plaintiffs, James Garrecht, for issuing the restraining order that has been driving plaintiffs to persist in these

Page 20

2003 U.S. Dist. LEXIS 18469, *

numerous law suits, [HN19]is entitled to absolute judicial immunity for his conduct of any judicial proceedings that come before him. Lerwill v. Joslin, 712 F.2d 435, 438 (10th Cir. 1983). To the extent that plaintiffs are seeking an injunction against the judge, the doctrine of abstention announced in the Younger case prohibits any action by this court with regard to the actions taken by the state court. Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). The prosecutor defendants are entitled to absolute immunity for their conduct in the initiation and prosecution of criminal cases. Imbler v. Pachtman, 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976); see Snell v. Tunnell, 920 F.2d 673 (10th Cir. 1990), cert. denied, 499 U.S. 976 (1991). In short, plaintiffs have alleged no claims against the judge or the prosecutors for which they do not have absolute immunity.

**2. Public officials have qualified [*61] immunity.**

The public officials have raised the defense of qualified immunity. [HN20]Once the defense of qualified immunity has been raised by a defendant, "the plaintiff assumes the burden of proof. Barney v. Pulsipher, 143 F.3d 1299, 1309 (10th Cir. 1998). The plaintiff must come forward with sufficient facts to show (1) that the defendant's conduct violated the law, and (2) that the relevant law was clearly established when the alleged violation occurred. Gehl Group v. Koby, 63 F.3d 1528, 1533 (10th Cir. 1995). "Where a plaintiff fails to demonstrate that a defendant's conduct violated the law, [the court] need not reach the issue of whether the law was clearly established."Id; Barney at 1309.

To the extent that plaintiffs' allegations in regard to the public officials can be understood, plaintiffs appear to be challenging the public officials' actions in regard to zoning legislation and the implementation of zoning regulations. Plaintiffs believed that certain construction activities at the Bennett residence were in violation of zoning regulations, and plaintiffs complain about the failure of the public officials to control or stop the activities. [*62] However, plaintiffs have alleged no facts that demonstrate that any of the conduct of the public officials was in violation of any legal or constitutional right that they possessed.

Except for rare exceptions, plaintiffs have failed to allege facts that reflect personal participation by many of the City officials in the activities about which plaintiffs make complaint. The parties who did not personally participate in the events are entitled to dismissal. Bennett v. Passic, 545 F.2d 1260 (10th Cir. 1976).

Having failed to demonstrate that the public official defendants violated any law or provision of the constitution, no further inquiry is required. Plaintiffs have failed

to carry their burden with regard to the claim of qualified immunity, and the public official defendants, therefore, are entitled to qualified immunity for their actions as public officials.

**3. The City has no liability.**

Plaintiffs have also named the City of Steamboat Springs as a defendant.

> [HN21]Under 42 U.S.C. § 1983, a local government may be held liable for the constitutional violation of its employees only when employee action, pursuant to official municipal [*63] policy. . . caused a constitutional tort. Therefore, to establish municipal liability a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged.

Hollingsworth v. Hill, 110 F.3d 733, 742 (10th Cir. 1997) (citation and quotations omitted); Monell v. New York Dept. of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). To hold the City liable, plaintiffs must show not only that a constitutional violation occurred, but also that some municipal policy or custom was the moving force behind the violation.Myers v. Oklahoma County Bd. of County Comm'rs, 151 F.3d 1313, 1320 (10th Cir. 1998).

The Sieverdings have alleged no facts that would tend to demonstrate the existence of a practice or policy by the City, and that a direct causal link between such custom or policy resulted in any violation of plaintiffs' rights. The failure to allege such facts is fatal to a claim against a municipality.

## VIII. PLAINTIFFS' CLAIMS ARE BARRED BY THE COLORADO GOVERNMENTAL IMMUNITY ACT

The majority, if not all, of the claims that [*64] plaintiffs have asserted against the public officials are claims that are based upon some tort theory -- claims such as negligence, misfeasance or fraud, for example. All of the claims for tort against the officials are barred by the Colorado Governmental Immunity Act. Colo.Rev.Stat. § 24-10-101 et seq.

[HN22]The statute provides that public employees are immune from liability for any claim that would lie in tort. Id. at § 118(2)(a). The statute provides a list of exceptions, but none of the torts alleged by plaintiffs fall within any of the listed exceptions. Id. at § 106(1). Therefore, all of the tort claims against all of the public

2003 U.S. Dist. LEXIS 18469, *

officials must be dismissed for this reason as well as the other reasons.

## IX. PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Ordinarily, the statute of limitations must be pled and proved as an affirmative defense. However, the City-County defendants and the Klauzer defendants have moved for dismissal on this basis because the factual averments of plaintiffs' complaints themselves contain the proof that plaintiffs' claims are time-barred. CAMAS Colorado, Inc. v. Board of County Commissioners, 36 P.3d 135, 139 (Colo.App. 2001); [*65] Wasinger v. Reid, 705 P.2d 533 (Colo.App. 1985); see also 2A Moore's Federal Practice § 12.10 (2d ed. 1985).

The longest period of limitations that could apply in this case is [HN23]the two-year limit for tort claims. Colo.Rev.Stat. § 13-80-102(1)(a). Claims against law enforcement authorities, and claims for defamation, are governed by a one-year statute of limitations. Id, § 13-80-103. The two-year limitations period applies to claims made under § 1983. Crumpton v. Perryman, 956 P.2d 670, 672 (Colo.App. 1998).

The statute provides that [HN24]"[a] cause of action . . . shall be considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." Colo.Rev.Stat. § 13-80-108(1). If the undisputed facts "clearly show that a plaintiff discovered, or reasonably should have discovered the negligent conduct as of a particular date, the issue may be decided as a matter of law." Salazar v. American Sterilizer Co., 5 P.3d 357, 365 (Colo.App.2000).

The plaintiffs filed their complaint in this court on October 11, 2002. Any [*66] events that occurred after October 11 of the year 2000, or the year 2001 in regard to defamation claims or claims against police officers and district attorneys, would be barred by the statutes of limitations.

Plaintiffs have failed to demonstrate that the claims that they assert in their complaints are not time-barred. As the City-County defendants and the Klauzer defendants point out in their motions, a reading of plaintiffs' complaints reflects that the events that underlie their claims began as early as 1992, when plaintiffs began disputing the law fulness of the conduct of the Bennetts in regard to their construction projects. Plaintiffs' complaints reflect that their disputes with the City and the County officials arose during the 1990's, and the facts that they allege reflect that they were aware, or should have been aware, of their legal complaints against the public officials well before October of 2000 or 2001. With the exception of the claims that have been asserted

against Mr. Brougham, Hall & Evans, and CIRSA, parties who allegedly breached plaintiffs' rights *after* this case was filed, plaintiffs' claims against the remaining defendants are time-barred.

## X. PLAINTIFFS [*67] FAIL TO STATE CLAIMS AGAINST BROUGHAM, HALL & EVANS AND CIRSA

In the amended complaints that were filed by plaintiffs on April 1, 2003, plaintiffs bring claims for the first time against David Brougham and his law firm, Hall & Evans, and against CIRSA, the insurance carrier for the City. The claims against Mr. Brougham are directed at his conduct in responding to plaintiffs' claims on behalf of his clients, including allegedly defamatory remarks that he made about Ms. Sieverding during the status conference of January 30, 2003. Against CIRSA, plaintiffs allege that the insurance company is liable for its "bad faith" handling of their claims against the City.

I have previously explained to plaintiffs -- both during the status conference and in orders that I issued in response to their motions to amend their complaints in order to state claims for bad faith -- that they cannot state a claim for insurance bad faith against CIRSA because they are not insured by CIRSA. [HN25]A claim for "bad faith breach of insurance contract" is grounded in both tort as well as contract. Farmers Group, Inc. v. Trimble, 691 P.2d 1138, 1141 (Colo. 1984). Because plaintiffs are not insured [*68] by CIRSA, they lack standing to sue that company. Farmers Ins. Exchange v. District Court, 862 P.2d 944, 948 (Colo.App. 1992) (adopting the rule that a party lacks standing to sue an insurance company until after the party obtains a judgment against the company's insured); Parrish Chiropractic v. Progressive Cas., 874 P.2d 1049, 1056-1057 (Colo. 1994) (holding that a party who is not the insured under the terms of an insurance contract is not a third-party beneficiary to that contract unless the parties to the agreement intended to benefit that third party, and explicitly provided so in the agreement). Because plaintiffs themselves did not have a contract with CIRSA, CIRSA does not owe them any contractual duty. And because CIRSA did not owe plaintiffs any contractual duty, it is not obligated to deal with plaintiffs in "good faith," or in any other manner Thus, plaintiffs are unable to state any legal theory which would constitute a claim against Farmers for breach of contract, for example, or for "bad faith" breach of contract.

In regard to plaintiffs' claims against Mr. Brougham, plaintiffs were advised during the status conference that [HN26]the statements [*69] of attorneys that are made during or in preparation for judicial proceedings are absolutely privileged, even if defamatory, and cannot form the basis of a law suit against the attorney. Buckhannon

2003 U.S. Dist. LEXIS 18469, *

v. U.S. West Communications, Inc., 928 P.2d 1331, 1334 (Colo.App. 1996); Club Valentia Home Owner's Ass'n v. Valentia Assoc., 712 P.2d 1024 (Colo.App. 1985). Thus, plaintiffs cannot state a claim against Mr. Brougham for any statements he allegedly made in relation to the events surrounding this law suit.

In fact, plaintiffs admit that they are fully aware that lawyers cannot be sued for their actions as advocates. Very early in their disputes with all of the defendants, plaintiffs sought legal advice from an attorney named Sandy Gardner. Plaintiffs state: "Sandy Gardner told the plaintiffs that the lawyers were entitled to write or say anything in their role as advocates." Pltfs' Objection to Oliphant Mtn to Dism. at 9. In suing Mr. Brougham, plaintiffs clearly are motivated by nothing more than malice, ill will and a desire to harass.

## XI. AGAINST THE NEWSPAPER DEFENDANTS PLAINTIFFS FAIL TO STATE A CLAIM, AND THEIR CLAIMS ARE BARRED BY THE STATUTE OF [*70] LIMITATIONS

Plaintiffs assert a claim of defamation against the newspaper defendants, in their words, "because they published an article on 3/31/01 quoting district attorney P. Elizabeth Wittemyer as saying that there was reasonable cause to believe that Kay Sieverding was a criminal and had harassed Jane Bennett and that Jane Bennett was a victim without asking what the probable cause [sic] that a crime was committed." FAC at 39. Plaintiffs assert other claims of fraud, nonfeasance, misfeasance, malfeasance and civil conspiracy. I have addressed the baseless nature of those claims in previous sections.

Plaintiffs' defamation claim is barred by Colorado's one-year statute of limitation. Colo.Rev.Stat. § 13-80-103(1)(a). [HN27]Plaintiffs were required to bring any claim for libel or defamation within one year of the publication of the challenged statement. Russell v. McMillen, 685 P.2d 255, 258 (Colo.App. 1984) (holding that a cause of action in libel "accrues when the defamatory statements are published"); Even v. Longmont United Hosp. Ass'n, 629 P.2d 1100, 1103 (Colo.App. 1981) (same). Plaintiffs' right to bring a claim [*71] for defamation against these defendants expired on March 31, 2002, well before they filed their complaints in this case.

Plaintiffs have also failed to state a claim against the newspaper defendants. First, plaintiffs have failed to allege any facts that demonstrate that defendants published the article for reasons of actual malice. See Diversified Mgmt., Inc. v. Denver Post, 653 P.2d 1103, 1106 (Colo. 1982); Smiley's Too, Inc. v. Denver Post Corp., 935 P.2d 39, 41 (Colo.App. 1996). Second, plaintiffs have failed to allege any facts that demonstrate that defendants either knew the statement to be false, or had serious, actual doubts as to the truth of the statement. See

Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 667, 105 L. Ed. 2d 562, 109 S. Ct. 2678 (1989); Bowers v. Loveland Publ'g Co., 773 P.2d 595, 596 (Colo.App. 1988).

The newspaper defendants have attached the article about which plaintiffs have complained. Newspaper Mtn to Dism., Ex. 1. The article consists of a report about the fact that prosecuting attorney Wittemyer moved for the dismissal of a charge of harassment against Ms. [*72] Sieverding, and about the fact that Judge Garrecht granted the motion, and dismissed the charge. The article states, "Wittemyer claims to have had 'probable cause' to go ahead with the case, but did not think the ultimate cost to the public would be worth whatever outcome would occur." Id. Plaintiffs allege that this statement is libelous because Wittemyer "implied Kay Sieverding was a criminal." FAC at P314.

[HN28]Whether an allegedly defamatory statement is constitutionally privileged is a question of law. Smiley's Too, Inc. v. Denver Post Corp., 935 P.2d at 41, citing NBC Subsidiary (KCNC-TV) v. Living Will Ctr., 879 P.2d 6 (Colo. 1994), cert. denied, 514 U.S. 1015 (1995). The gist of the March 31, 2001, article reflects that it is on a matter of public concern. [HN29]"The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions. . . are without question events of legitimate concern to the public and consequently fall within the responsibility of the press to report the operations of government." Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 491, 43 L. Ed. 2d 328, 95 S. Ct. 1029 (1975). [*73] If a public figure or a matter of public concern is involved, a heightened burden applies. Smiley's Too, 935 P.2d at 41. "This is so because reporting about public figures or matters of public concern triggers certain constitutional privileges" on the part of the press to engage in "uninhibited, robust, and wide open debate on public issues."Id.

Because the March 31 article is on a matter of public concern, plaintiffs must allege that the newspaper defendants published the offending statement with actual knowledge of its falsity or with serious reservations as to its truth. They have failed to do so. Their claim for defamation against the newspaper defendants is therefore barred by the First Amendment. See P.G. v. Ramsey County, 141 F. Supp. 2d 1220, 1227 (D.Minn. 2001) (dismissing claim for defamation because plaintiff failed to plead facts sufficient to warrant a conclusion that defendants acted with "actual malice").

## XII. RECOMMENDATION THAT PLAINTIFFS BE ORDERED TO PAY ATTORNEY FEES AND COSTS

### 1. Overview of background.

2003 U.S. Dist. LEXIS 18469, *

Plaintiffs' claims are groundless and frivolous. They have been told this on innumerable occasions, both [*74] by judges as well as by lawyers. Ms. Sieverding, the spokesperson for plaintiffs, has shown through all of her remarks and actions that she will neither be persuaded nor deterred by the remarks and rulings of judges. Indeed, since 1992, Ms. Sieverding has been relentless in bringing suit against each and every person who she perceives to be in opposition to her primary goal, which is to demonstrate that the restraining order that was entered against her was entered unjustly. She has ignored the dismissal of her complaints in the past, and all signs point to her determination to ignore any dismissals that are entered by this court, unless something is done that will act as an effective deterrent.

Ms. Sieverding was told by Federal District Court Judge Crabb in October of 2002 that her claims are "downright bizarre," "so vague as to be meaningless," "nebulous," and impossible to discern. City-County Mtn Dism./Sum.Jdgmt, Ex. 3 at 2. In the face of these remarks, in the face of Judge Crabb's dismissal of plaintiffs' case "with prejudice," Ms. Sieverding nevertheless simply took her complaints to another state, Colorado, and filed them again, here in federal court.

Shortly after their [*75] complaint was filed, plaintiffs were told by me in a lengthy order of January 10, 2003, that their claims were "impossible to understand" and "appear to be completely groundless and frivolous." During the status conference of January 30, 2003, I dwelled at length upon the frivolous and baseless nature of the claims. Rather than deterred, or even slowed, by such remarks from a judicial officer and the lawyers who were present, Ms. Sieverding expressed her opinion at that time that everyone was wrong except her. Her persistence in this lawsuit reflects that she absolutely refuses to be influenced either by reason or by judicial mandate.

The Klauzer defendants served a "safe harbor" letter upon plaintiffs pursuant to Fed.R.Civ.P. 11(c)(1)(A), together with a draft motion for sanctions. See Klauzer Mtn for Rule 11 Sanctions at 2, and Ex. 1. The safe harbor letter and draft motion reiterate again for plaintiffs the frivolous nature of the claims that they asserted against the Klauzer defendants, and, by extension, against the other defendants. The letter repeated the warnings that attorney fees and costs would be pursued. The warnings were ignored [*76] by Ms. Sieverding.

Plaintiffs are not prosecuting this case on a *pro se* basis because they lack the funds to hire a lawyer, or because they simply have chosen to do this case on their own. According to their own pleadings, they consulted approximately 20 lawyers and could find *not one* lawyer who would take their case. Plaintiffs have stated that they are able to pay the fees that a lawyer would demand,

because in one pleading filed with this court plaintiffs asked the court to appoint an attorney *that they would pay for themselves.* In short, plaintiffs are financially able to hire a lawyer; they simply could not find one who would take their case.

Ms. Sieverding even refuses to understand that the approximately 20 lawyers that she attempted to retain declined to take her case for reasons other than the one she insists upon believing: that the lawyers are afraid to sue other lawyers because of possible recriminations from the Bar Associations. The materials that she presented in support of her position reflected, in the main, contrary reasons. I read one lawyer's remarks to her during the status conference, where I quoted him as saying, "In short, your case will be a difficult [*77] one as I do not see a claim under which relief can be granted to you. Based on this, we will not be able to represent you in this matter. . . ." Trans. of Proceedings, Jan. 30, 2003 (attached with Motion to Dismiss of City-County defendants), p. 23. Ms. Sieverding insisted that his remarks did not mean that the lawyer believed that she had no claim. Id.

### 2. Requirements of Rule 11 for *pro se* parties.

[HN30]Rule 11 requires parties (or those who have them) to conduct a reasonable investigation into the facts that they believe will support their claims, and into the laws that they believe will provide them with a legal basis for seeking relief from the court. Parties who file law suits on a *pro se* basis must comply with the provisions of Rule 11, the same as if they were lawyers. Fed.R.Civ.P. 11; Business Guides, Inc. v. Chromatic Communications Enters., Inc., 498 U.S. 533, 544-45, 112 L. Ed. 2d 1140, 111 S. Ct. 922 (1991) (explaining that Rule 11 applies both to parties who are represented by counsel and to *pro se* parties as well); Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1540 (10th Cir. 1996) [*78] (same); Eisenberg v. University of N.M., 936 F.2d 1131, 1134 (10th Cir. 1991) (same).

[HN31]If the court finds that a *pro se* party has signed a pleading in violation of Rule 11, the court "may. . . impose an appropriate sanction" upon that party." Fed.R.Civ.P. 11(c); see also Farguson v. MBank Houston, N.A., 808 F.2d 358 (5th Cir. 1986) (approving the imposition of monetary sanctions against a *pro se* party who filed, for the second time, the same claims against a party); Miller v. United States, 868 F.2d 236 (7th Cir. 1988) (approving imposition of monetary sanctions, and approving injunction against further filings, against plaintiff who would not stop filing the same types of claims against the tax laws of the United States); Goad v. Rollins, 921 F.2d 69 (5th Cir.), cert. denied, 500 U.S. 905 (1991) (approving imposition of monetary sanctions,

2003 U.S. Dist. LEXIS 18469, *

and approving injunction against further filings, for claims that were baseless and frivolous, and returning case to trial court for imposition of additional monetary sanctions); Daniels v. Stovall, 660 F. Supp. 301 (S.D. Tex 1987) [*79] (filing of frivolous Complaint warranted payment of attorney fees as a sanction, and trial court entered order that prohibited plaintiff from filing any further cases until she had paid the attorney fees in full).

[HN32]Under the provisions of Rule 11, when a party signs a pleading, the signature of that party serves as a certification that the party has conducted a reasonable inquiry into the facts and the law before the pleading was filed. The signature also serves as a certification that the investigation into the facts and law have provided the party with *both* facts *and* law that will support the claim that is being made. Id. The certification requirement mandates that "all signers consider their behavior in terms of the duty they owe to the court system to conserve its resources and avoid unnecessary proceedings." 5A C. Wright & A. Miller, *Federal Practice & Procedure* § 1335, P57-58 (2d ed. 1990).

[HN33]*Pro se* parties are entitled to have their pleadings reviewed with some measure of liberal deference accorded to their status as *pro se* parties. However, this liberal deference "does not confer a license to harass others, clog the judicial machinery with meritless [*80] litigation, and abuse already overloaded court dockets." In re Winslow, 132 B.R. 1016, 1019 (Bankr.D.Colo. 1991) (internal citations and quotation marks omitted).

[HN34]The focus of Rule 11 is narrow. "It relates to the time of signing of a document and imposes an affirmative duty on each attorney and each party, represented or *pro se*, to conduct a reasonable inquiry into the validity and accuracy of a document before it is signed." Eisenberg v. University of New Mexico, 936 F.2d at 1134. [HN35]Even though *pro se* litigants may not have the training and resources of an attorney, they nevertheless must comply with Rule 11 and make a reasonable inquiry as to whether a complaint is well-grounded in fact and warranted by existing law. *See* Fed.R.Civ.P. 11(b); *see also* Danvers v. Danvers, 959 F.2d 601, 604-05 (6th Cir. 1992).

[HN36]The Tenth Circuit has adopted the view that "an attorney's actions must be objectively reasonable in order to avoid Rule 11 sanctions." White v. General Motors Corp., Inc., 908 F.2d 675, 680 (10th Cir. 1990). By extension, the actions of *pro se* parties [*81] are required to be "objectively reasonable" as well.

A good faith belief in the merit of an argument is not sufficient; the attorney's [or the party's] belief must also be in accord

with what a reasonable, competent attorney would believe under the circumstances.

Id.

The standard is one of reasonableness under the circumstances. Under this standard, the court must determine what a reasonable person in the *pro se* litigant's position would have done. "Subjective good faith -- that is, a pure heart but empty head -- is no defense." OTR Drivers at Topeka Frito-Lay, Inc. v. FritoLay, Inc., 160 F.R.D. 146, 149 (D.Kan. 1995), internal quotation marks omitted.

### 3. Discussion of plaintiffs' Rule 11 violations.

Rule 11 requires that the Sieverdings, before filing their law suit, conduct a reasonable inquiry into the factual and legal bases for their proposed claims. A second requirement consists of the Sieverdings' duty to determine, before filing their claims, "whether any obvious affirmative defenses bar the case." White v. General Motors Corp., Inc., 908 F.2d at 682. Here, although done post-filing, that inquiry was conducted [*82] *for* plaintiffs by the numerous judicial officers and lawyers who have informed them that they have no claims. Thus, plaintiffs have not merely failed to make a reasonable inquiry into the factual and legal bases for their claims, and the existence of any "obvious affirmative defenses," they have had that inquiry thrust upon them by others more educated and knowledgeable in the law than they, *and they have deliberately and continuously chosen to ignore what they have been told!* As the Tenth Circuit Court stated in the White case:

> We agree that sanctions are appropriate in this case, not because plaintiffs failed to inquire into the facts of their claims, but because they failed to act reasonably given the results of their inquiries.

White, 908 F.2d at 682.

Although a lay person may not understand the principles that underlie Rule 8(a) of the Federal Rules of Civil Procedure, plaintiffs were provided with a discourse on these principles when Judge Crabb dismissed plaintiffs' claims, "with prejudice." The content and condition of all of the dozen or so complaints that have been tendered by plaintiffs [*83] in this action reflect that plaintiffs ignored Judge Crabb's remarks, and filed the identical complaints in this court.

Although a lay person might not understand that once a case has been dismissed by a judge "with preju-

2003 U.S. Dist. LEXIS 18469, *

dice" it may not be filed again, the Sieverdings were expressly told during the status conference of January 30, 2003, that if their case had been filed and dismissed before, it would likely be dismissed here. Fed.R.Civ.P. 41. In the texts of the motions for dismissal that were filed by the Klauzers and the City-County defendants, the Sieverdings were provided with the evidence that their case had been previously dismissed with prejudice, and were informed explicitly of the consequences that would flow from these circumstances. Whereas a reasonable person would have heeded the warnings, and would have considered the substance of Rule 41 with care, the Sieverdings ignored the evidence and the warnings, and forged ahead, arguing only, in effect, that the first efforts were just for practice.

Although a lay person may not know about certain technical legal principles before filing a case, the Sieverdings were expressly told and [*84] warned by the lawyers and by this court, for example, the following: that only "state actors" may be sued pursuant to § 1983; that no legal duties were owed to them by lawyers who acted on behalf of persons who were adverse to the Sieverdings; that judges and prosecutors possessed absolute immunity; that City officials possessed qualified immunity; that lawyers enjoyed immunity for their remarks made preceding and during the events related to a law suit; that City's were immune from suits for tort; and that insurance companies may not be sued for bad faith by parties who were not themselves insureds. Whereas no reasonable person would ignore the advice and warnings contained in the numerous remarks of judges and lawyers, the Sieverdings elected to disregard all advice and warnings presented to them, and persisted in the prosecution of their baseless and frivolous claims.

Even had plaintiffs not received the advice and warnings that they received, no reasonable person could possibly conclude that any basis exists for the claims that plaintiffs have attempted to assert in this case against the Bar Associations, or against Davis Graham & Stubbs, or against any of the lawyers. By way [*85] of example, no reasonable person could believe, as plaintiffs believe here, that the Bar Associations could be blamed, and held liable in damages, for a party's failure or inability to find a lawyer who will take his or her case. And no reasonable person could believe, as plaintiffs believe here, that a law firm such as Davis Graham & Stubbs could possibly be held liable for damages for failing to file grievances against a list of lawyers that has been provided to them in an e-mail from plaintiffs. The bare notions that underlie plaintiffs' efforts to sue the Bar Associations and Davis Graham & Stubbs are so absurd as to cause reasonable persons to shake their heads in dismay and wonderment.

In summary, plaintiffs have violated the terms of Rule 11 in egregious fashion. Their violations of Rule 11 are made all the more egregious by the fact that they have received explicit advice and warnings from both court and counsel, including counsel whom they themselves consulted, and by the fact that plaintiffs have deliberately ignored the advice and warnings that they received. For conduct such as this, sanctions are appropriate and necessary.

**4. Amount of sanctions.**

In discussing [*86] the amount of a monetary sanction that is appropriate to impose in any particular case, the Tenth Circuit stated:

> [HN37]Rule 11 sanctions are meant to serve several purposes, including (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management.

White v. General Motors Corp., Inc., 908 F.2d at 683.

The Circuit Court acknowledged that Rule 11 specifically allows the award of attorney fees to the opposing party as an appropriate sanction, but stated that such an award "'is but one of several methods of achieving the various goals of Rule 11.'"Id, quoting Doering v. Uniion County Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988). In considering an appropriate sanction, the Court stated that a district court must expressly consider at least the following circumstances: (1) the reasonableness of any attorney fees that are sought by a party after measuring the fees by a lodestar calculation; (2) the minimum amount that is necessary in order to deter the offending party; (3) the offender's ability [*87] to pay; (4) and such other factors as may be appropriate in the circumstances, including such factors as "the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, [and] the risk of chilling the type of litigation involved. . . ." Id. at 684-85. [HN38]Because the primary purpose of sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for its costs in defending a frivolous suit, "the limit of any sanction award should be that amount reasonably necessary to deter the wrongdoer." Id. at 685.

In the circumstances of this case, an award of fees and costs to defendants is an appropriate sanction to impose upon plaintiffs. These plaintiffs are neither ignorant nor naive, and they have not asserted a few claims

Page 26

2003 U.S. Dist. LEXIS 18469, *

against a few defendants out of momentary anger or spite. These plaintiffs -- or, more appropriately, Ms. Sieverding -- have harbored a ten-year obsession with the perceived wrongs of everyone who has had the misfortune of straying into the path of plaintiffs' pursuit of their misguided vision of justice. Ms. Sieverding is a plaintiff who refuses [*88] to listen to reason or orders from any person or court. Her ten-year crusade against the defendants in this case has been marked, as illustrated above, by actions and allegations that are vindictive and malicious.

Ms. Sieverding's malice and bad faith is illustrated by the manner in which she has made wild accusations about virtually every public official in Steamboat Springs. She is aware that her actions are public in nature, and that her comments and actions likely will be reported by the media. After all, she has sued the newspapers for reporting other events that underlie this case. Knowing this, she has brazenly accused the public officials of every manner of crime and corruption, admitting all the while that she has no evidence whatsoever to support her accusations. This conduct presents an unusual set of circumstances that warrant an unusual response from the court, both to punish as well as to deter.

As I write this Recommendation, I have learned that plaintiffs have filed on October 2, 2003, yet another complaint with this court based upon the same series of events that transpired in Steamboat Springs that are described in this case, Sieverdings v. Coldwell Banker et [*89] al., # 03-N-1949. Once again, plaintiffs' minor children are named as parties, although the Complaint has been filed *pro se*, and the children are not represented by counsel.

On its face, this new case is as frivolous as this present one. Plaintiffs allege in the most recent case that the realtors who assisted them in the sale of their property were a part of "the conspiracy" that they describe in this present case, and because the realtors were a part of the conspiracy, they caused plaintiffs to sell their property for less than its value. Evidence of the conspiracy, according to Ms. Sieverding, is presented by the fact that the accused realtors were members of the Steamboat Arts Council along with other co-conspirators, and the realtors were "in the same social network as Mr. and Mrs. Randy Klauzer." Plaintiffs' Complaint at PP36 & 39.

Obviously, unless deterred through some significant measure, these plaintiffs will not stop. This chain of lawsuits and voluminous pleadings needs to have a wooden stake driven through its heart.

The Sieverdings operate their own business, and they have stated that they are able to afford their own attorney -- if they could find one who would [*90] take their case. In light of these facts, a small monetary sanction is inadequate to act as a deterrent. Because of the burdens that the Sieverdings have imposed upon defendants and the court, a small monetary sanction would diminish the seriousness of plaintiffs' conduct.

The file in this case reflects the gross nature of the plaintiffs' "litigation abuse," and the need for compensation to be paid to defendants, the primary victims of plaintiffs' litigation abuse. Until I entered an order that stopped plaintiffs from filing additional motions or pleadings, the court and opposing counsel were literally inundated with paper from plaintiffs. All of plaintiffs' motions to the court were so frivolous or nonsensical that responses from defendants were unnecessary. However, even though defendants may not have faced the need to respond to frivolous motions, the file reflects several pleas from defendants for an order that would stop Kay Sieverding both from flooding them with e-mails and letters, and from attempting to contact them by telephone -- virtually on a daily basis.

Initially, I entered an order on June 4, 2003, in which I "suspended" the meet-and-confer requirements of Local Rule 7.1A, [*91] advising the parties, but primarily Ms. Sieverding, that during the period that the dispositive motions were under advisement the parties should have no need to meet and confer about any matter associated with this case. Ultimately, however, I was compelled to issue an order on July 31, 2003, in which I enjoined plaintiffs from the filing of any further pleadings, and enjoined plaintiffs from any further contact of any kind with opposing counsel or parties, until after the dispositive motions were resolved. My effort was only partially successful, as I received letters from two different lawyers complaining that Ms. Sieverding persisted in her efforts to contact their offices.

Of course, any effort by any counsel for a defendant, including the taking of a phone call or the review of an e-mail, creates a financial burden that must be passed along by counsel to the respective client. Ms. Sieverding acknowledged the existence of this burden upon defendants in one of her pleadings where she remarked that she could press this case as persistently as she wished, because she was doing it on her own, and had no concerns for the payment of attorney fees. *See*, Order of July 31, 2003, at [*92] 3.

This case has represented a huge drain on the court and its resources. The numerous filings by plaintiffs must be processed by the clerical staff for the court, and because of the bizarre titles plaintiffs appended to their motions the clerks are confronted with the sometimes impossible task of deciphering exactly what it is they are logging in for plaintiff. Although I instructed plaintiffs in several orders to copy the form and style of the pleadings that were being filed at that time by Mr. Brougham on

2003 U.S. Dist. LEXIS 18469, *

behalf of the City-County defendants, plaintiffs ignored my instructions and continued to file motions in an awkward format, with titles that made no sense.

I personally have been caused to address and resolve some 25 or 30 motions from plaintiffs. As I noted above, most of the motions were frivolous, even silly, and could be resolved with relatively brief orders. However, though frivolous and silly, the motions still needed to be read and given the appropriate consideration under Haines v. Kerner. Lengthy motions required lengthy periods of time to read and consider, and I have been compelled to issue orders that exceeded five and ten pages in length in an effort to address [*93] questions or problems raised by plaintiffs that no reasonable party would raise, or to address again questions or problems raised by plaintiffs that I had addressed in previous orders. Indeed, because plaintiffs have named 36 parties in this law suit, and have alleged hundreds of claims, all of which are frivolous, I have been compelled to write a Recommendation for Dismissal that is longer than this case deserves.

In the circumstances presented by this case, the amount of monetary sanction that is appropriate and necessary to deter plaintiffs from the future filings of cases that are related to the events that transpired in Steamboat Springs is the amount that defendants have incurred in legal fees and costs from and after the date that plaintiffs were formally warned, in open court, that their claims were baseless and frivolous, or January 30, 2003. Payment by plaintiffs to defendants of all legal fees and costs that have been incurred will serve to deter plaintiffs from future litigation abuse, punish them for their present litigation abuse, and will compensate the parties who have been the victims of their litigation abuse. White v. General Motors Corp., Inc., 908 F.2d at 683. [*94] By deterring plaintiffs from future filings, the court also seeks to secure its own interests, which are to protect the court staff from litigation abuse, and facilitate the management of the cases on its dockets. Id. Of course, at a later date the court will need to conduct a lodestar review in order to determine the reasonableness of the fees that are sought by each defendant. Id. at 685.

Attorney fees have been expressly requested by the Klauzer defendants, the City-County defendants and James B.F. Oliphant. However, I recommend that plaintiffs be ordered to pay attorney fees and costs not only to the parties that have expressly requested them in their pleadings, but to all defendants, whether fees and costs were requested or not. The litigation abuse by plaintiff is too widespread and too serious to limit their exposure to sanctions only to those defendants who have requested them. Any such limitation would not act to deter plaintiffs from future, similar filings.

Indeed, plaintiffs' copy costs for their history of filings probably exceed the amount of any sanctions that may be imposed by this court. They have tendered for filing to this court over 1000 [*95] pages of complaints and amended complaints, and their responses just to the motions to dismiss exceed 400 pages -- including 128 pages and 66 pages for plaintiffs' responses to the motions to dismiss filed by the Bar Associations, parties for which the absence of any legitimate claim is so clear that no rational person could possibly argue to the contrary. Add to these numbers the numerous so-called motions that plaintiffs have filed, multiply by the number of defendants to be served with copies, and plaintiffs can be seen to have spent thousands of dollars simply on copy and mailing costs. Obviously, a small sanction will mean little to these people.

[HN39]If a party wishes to obtain sanctions pursuant to Rule 11, they are required to first provide to the offending party a "safe harbor" period of 21 days. Fed.R.Civ.P. 11(c)(1)(A). The purpose of that "safe harbor" is to provide an opportunity to the miscreant to withdraw the pleading that offends the provisions and purposes of Rule 11. However "the 'safe harbor' provision does not apply when a court imposes sanctions on its own initiative." Laurino v. Tate, 220 F.3d 1213, 1219 (10th Cir. 2000); [*96] citing Hutchinson v. Pfeil, 208 F.3d 1180, 1184 (10th Cir. 2000). A sua sponte award of sanctions requires the issuance of a show cause order, with reasonable opportunity to respond. Fed.R.Civ.P. 11(c)(1)(B); Laurino, 220 F.3d at 1219.

My order of January 10, 2003, and my status conference of January 30, 2003, stood as clear notice to plaintiffs of the probability that sanctions would be imposed against them if they failed or refused to withdraw the claims that the court or counsel indicated were frivolous or groundless, such as the claims against the lawyers who represented persons other than plaintiffs, and the Bar Associations. [HN40]In light of the clear notice that has been presented to plaintiffs, the court has discretion to impose any sanction that is warranted, so long as the limit of the sanction is "that amount reasonably necessary to deter the wrongdoer." White v. General Motors Corp., Inc., 908 F.2d at 685.

Payment of fees alone is not a sufficient deterrent in this case. The determination manifested by plaintiffs in their pursuit of this case reflects that even the requirement [*97] that they be made to pay fees and costs to all defendants may not deter them from filing future cases. As mentioned above, on October 3, 2003, plaintiffs filed another patently frivolous complaint that has its roots and origin in the same events in Steamboat Springs that have given rise to this present case. As I have noted throughout this recommendation, these types of actions by plaintiffs are being taken in the face of prior dismiss-

2003 U.S. Dist. LEXIS 18469, *

als "with prejudice" by another judge in another district, and in the face of explicit advice and warnings by a judicial officer for this district that their claims in regard to activities in Steamboat Springs are baseless. Thus, I recommend, in addition to the imposition of the above monetary sanction, that the court issue an injunction that prevents plaintiffs from filing any other cases in this court that relate to any of the series of events that occurred in Steamboat Springs, and that form the basis and backdrop for this case, unless plaintiffs are represented by counsel.

The requirement that they must be represented by counsel in order to file a complaint is a reasonable one, and ensures that any complaints that are filed have first been reviewed [*98] by an attorney, and certified by that person to be a complaint that has a basis in fact and in law. Plaintiffs' objection that no lawyer will represent them because "they are suing lawyers" is so absurd as to be not worthy of any further discussion.

## XIII. CONCLUSION

### A

I reiterate again here the RECOMMENDATION that I submitted on May 14, 2003, and I **RECOMMEND that the two minor children, Ed and Tom Sieverding, be DISMISSED** as parties from this suit.

### B

**For the reasons stated in this Recommendation, I RECOMMEND that the following motions to dismiss be GRANTED, and that this case be DISMISSED WITH PREJUDICE:.**

1. Defendants Randall Klauzer, James "Sandy" Horner, J. Richard Tremaine, Klauzer & Tremaine, LLC, and Jane Bennett's Motion to Dismiss [filed May 1, 2003];

2. Motion to Dismiss and/or Motion for Summary Judgment [filed May 1, 2003, by public officials (City and County), David Brougham, and Hall & Evans, LLC], including the request for attorney fees and costs as a sanction for frivolous litigation;

3. Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) [filed April 29, 2003, by James B.F. Oliphant];

[*99] 4. Defendant American Bar Association's Motion Pursuant to Fed.R.Civ.P. 12(b)(6) to Dismiss Plaintiffs' Complaint With Prejudice [filed May 19, 2003];

5. Defendant Colorado Bar Association's Motion to Dismiss Plaintiff's [sic] Complaint [filed May 1, 2003]; and

6. Motion to Dismiss All Claims Against New spaper Defendants [filed May 14, 2003].

### C

**I ALSO RECOMMEND that the following motions for sanctions be GRANTED:**

2. Defendants Randall Klauzer, James "Sandy" Horner, J. Richard Tremaine, Klauzer & Tremaine, LLC and Jane Bennett's Motion for Rule 11 Sanctions [filed May 9, 2003]; and

5. Motion for Sanctions Pursuant to F.R.C.P. 11 [filed April 29, 2003, by James B.F. Oliphant].

### D

**I ALSO RECOMMEND** that plaintiffs, meaning David and Kay Sieverding only, be ordered **as a sanction to pay the attorney fees and costs** that have been incurred by all of the defendants, **whether requested or not**, from and after the date of January 30, 2003, and that the matter be referred back to me for a determination of the reasonableness of any fees that are sought.

### E

[*100] **Finally, in order to prevent further abusive litigation by plaintiffs, I RECOMMEND that they be enjoined** from filing any further lawsuits that relate to any of the series of events that occurred in Steamboat Springs, or that form the basis and backdrop for this case, unless plaintiffs are represented by counsel.

Dated at Denver this day of October 14, 2003

BY THE COURT:

O. Edward Schlatter

U.S. Magistrate Judge

### ADVISEMENT UNDER FED. R. CIV. P. 72

Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. FED. R. CIV. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and [*101] recommendations. United States v. Raddatz, 447 U.S. 667, 676-83, 65 L. Ed. 2d 424, 100 S. Ct. 2406 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommenda-

2003 U.S. Dist. LEXIS 18469, *

tions within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. Thomas v. Arn, 474 U.S. 140, 155, 88 L. Ed. 2d 435, 106 S. Ct. 466 (1985); Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991); Niehaus v. Kansas Bar Ass'n, 793 F.2d 1159, 1164 (10th Cir. 1986).

# EXHIBIT H

LEXSEE



Analysis
As of: Apr 03, 2008

**LEESA WITT, Plaintiff, v. CONDOMINIUMS AT THE BOULDERS ASSOCIATION, and TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY, Defendants; CONDOMINIUMS AT THE BOULDERS ASSOCIATION, Third-Party Plaintiffs, v. GENESEE COMMUNITIES VII, LLC, Third-Party Defendant.**

Civil Action No. 04-cv-02000-MSK-MEH

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

2007 U.S. Dist. LEXIS 19238

March 16, 2007, Decided
March 19, 2007, Filed

**PRIOR HISTORY:** Witt v. Condos. at the Boulders Ass'n, 2006 U.S. Dist. LEXIS 33994 (D. Colo., May 26, 2006)

**CORE TERMS:** summary judgment, odor, leak, breach of contract, genuine, insured, issue of fact, battery, assault, civil conspiracy, offensive, breach of fiduciary duty, emotional, harmful, limine, unit owner, fiduciary duty, condominium, infliction, distress, duty of good faith, sewer gas, repair, owed, apprehension, breached, reply, law firm, valuation, concrete

**COUNSEL:** [*1] For Leesa Witt, Plaintiff: Terry Alan Wallace, LEAD ATTORNEY, Terry Wallace, Attorney at Law, Boulder, CO.

For Condominiums at the Boulders Association, a Colorado nonprofit corporation, Defendant: C. Michael Montgomery, Thomas Henry Blomstrom, Montgomery, Kolodny, Amatuzio & Dusbabek, L.L.P, Denver, CO.

For Travelers Property Casualty Insurance Company, Defendant: Leslie Ann Eaton, LEAD ATTORNEY, Katherine Allison White, Ballard, Spahr, Andrews & Ingersoll, LLP, Denver, CO.

For Condominiums at the Boulders Association, a Colorado nonprofit corporation, ThirdParty Plaintiff: C. Michael Montgomery, LEAD ATTORNEY, Thomas Henry Blomstrom, Montgomery, Kolodny, Amatuzio & Dusbabek, L.L.P, Denver, CO.

For Genesee Communities VII, LLC, a Colorado Limited Liability Company, ThirdParty Defendant: Scott L. Levin, Fisher, Sweetbaum, Levin & Sands, P.C., Denver, CO.

**JUDGES:** Marcia S. Krieger, United States District Judge.

**OPINION BY:** Marcia S. Krieger

**OPINION**

**OPINION AND ORDER GRANTING, IN PART, MOTIONS FOR SUMMARY JUDGMENT AND DENYING MOTIONS *IN LIMINE***

**THIS MATTER** comes before the Court pursuant to Defendant Condominiums at the Boulders Association's ("the Association") [*2] Motion for Summary Judgment (# 140), the Plaintiff's response (# 148), and the Association's reply [1] (# 161); Defendant Travelers Property Casualty Insurance Company's ("Travelers") Motion for Summary Judgment (# 141), the Plaintiff's response (# 149), and Travelers' reply (# 150); Third-Party Defendant Genesee Communities VII, LLC's ("Genesee") Motion *In Limine* to Exclude Evidence Concerning County Assessor's Valuation of Property (# 156) (in which the Association joins [2] (# 159)), the Plaintiff's response (# 166), and Genesee's reply (# 173); Traveler's Motion *In Limine* to Exclude Plaintiff's Undisclosed Trial Witnesses (# 157) (in which the Association

joins (# **160**)), to which no response was filed by the Plaintiff; and the Plaintiff's Motion for Costs and Fees (# **161**), the Association's response (# **169**), Travelers' response (# **170**), and the Plaintiff's reply (# **171**)

    1  The Association's reply is docketed as a "Brief in Opposition," not a reply brief.

    2  Joining in a motion is not a mechanism contemplated by the Federal Rules of Civil Procedure or the District of Colorado's Local Rules. As will be seen herein, "joining" in a motion creates a variety of administrative and legal obstacles to the Court in monitoring the status of and resolving motions. For future reference, all parties are advised that "joinder" in motions will not be permitted. Each party must move separately for the relief it seeks, although it may, where appropriate, adopt the arguments of another party by reference.

[*3] **FACTS**

    In summary, [3] on or about July 30, 2002, the Plaintiff purchased a condominium built by Genesee, and managed by Defendant Association. In or about March 2003, the Plaintiff noticed an unpleasant odor, which she describes as "sewer gas," inside her home. She complained of the odor to Genesee, and over a period of time, several individuals inspected the unit, sometimes locating and repairing defects that might have been the source of the odor, other times finding no odor to exist. Despite all attempts at repair, the Plaintiff continued to notice the odor, and eventually, Genesee refused to investigate the matter further.

    3  More detailed recitations of the relevant facts and the motions *in limine* are included in the relevant portions of the analysis, *infra*.

    In September 2003, the Plaintiff filed a claim with Defendant Travelers, the Association's insurer. Travelers conducted additional inspections and tests of the property, but could not discern the source of the odor. In that same month, [*4] the Plaintiff moved out of the unit, believing that the source of the odor was causing her to suffer health problems.

    The Plaintiff commenced this diversity action against the Association and Travelers, asserting seven claims: (i) breach of contract, apparently referring to both the condominium agreement (as to the Association) and breach of the insurance contract as between the Association and Travelers on a third-party beneficiary theory (as to Travelers); (ii) battery, apparently asserted only against the Association, in that it purposefully has exposed and continues to expose her to sewer gas; (iii) assault, on the same terms as the battery claim; (iv)

breach of fiduciary duty, against both the Association and Travelers as the Association's agent; (v) negligent infliction of emotional distress, apparently as against both Defendants; (vi) breach of the duty of good faith, based upon Traveler's failure to comply with its policy with the Association, and, the Court assumes, upon the Association's breach of its contract; (vii) civil conspiracy, in that the Association and Travelers conspired with each other and with Genesee to breach the condominium agreement and insurance policy.

    [*5]  Both Defendants filed motions for summary judgment. The Association's motion (# **140**) argues that: (i) with regard to the Plaintiff's claim for breach of contract, the Plaintiff cannot show that the Association failed to perform its duties under the contract, or that she has suffered any damages as a result of any breach; (ii) with regard to the claims of battery and assault, the Plaintiff cannot prove that the association caused a harmful or offensive contact with the Plaintiff or the apprehension of such contact, and that any such contact or apprehension was intended by the Association; (iii) with regard to the breach of fiduciary duty claim, the Plaintiff cannot show that the Association breached any duty or that she suffered any injury as a result of any breach; (iv) with regard to the negligent infliction of emotional distress claim, the Plaintiff cannot prove that the Association was negligent, that its negligence created an unreasonable risk of harm, or that it caused the Plaintiff to fear for her safety; (v) on the breach of the duty of good faith claim, the Plaintiff cannot show any breach of the duty of good faith; and (vi) on the civil conspiracy claim, the Plaintiff [*6] cannot prove any of the elements of that claim.

    Traveler's motion (# **141**) argues that: (i) as to the breach of contract claim, the Plaintiff cannot prove the existence of a contract between herself and Travelers, or that any such contract was breached by Travelers; (ii) as to the battery and assault claims, the Plaintiff cannot prove that Travelers caused and intended to cause any harmful contact or apprehension in the Plaintiff; (iii) as to the breach of fiduciary duty claim, the Plaintiff cannot prove the existence of any fiduciary relationship between herself and Travelers; (iv) as to the negligent infliction of emotional distress claim, the Plaintiff cannot prove that Travelers acted negligently, that it caused an unreasonable risk of harm to the Plaintiff, or that the Plaintiff suffered any fear for her safety; (v) as to the breach of the duty of good faith claim, the Plaintiff cannot show the existence of a contract with Travelers giving rise to any duty of good faith; and (vi) as to the civil conspiracy claim, the Plaintiff cannot prove any of the elements of that claim.

**ANALYSIS**

## A. Summary judgment standard

Rule 56 of the Federal Rules of Civil Procedure [*7] facilitates the entry of a judgment only if no trial is necessary. See _White v. York Intern. Corp._, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. See _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); _Kaiser-Francis Oil Co. v. Producer's Gas Co._, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. See _Anderson_, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the [*8] right to a trial. See _Garrett v. Hewlett Packard Co._, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a _prima facie_ claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. See _Celotex Corp. v. Catrett_, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The motions by the Association and Travelers are identical with regard to the claims on which summary judgment is sought, and largely similar with regard to the elements the Plaintiff is allegedly unable to prove on each claim. The Court will analyze the motions on a claim-by-claim basis, rather than as separate motions, and will differentiate between the two motions only where the nature of the Plaintiff's claim or the relevant evidence differs as against each Defendant.

## B. Breach of contract claim

Under Colorado [*9] law, to prove her claim for breach of contract, the Plaintiff must establish: (i) that a contract existed with the relevant Defendant; (ii) that she performed her obligations under the contract or that her performance was excused; (iii) that the Defendant failed to perform the contract as required; and (iv) that she suffered injury as a result. _Western Distributing Co. v. Diodosio_, 841 P.2d 1053, 1058 (Colo. 1992).

Turning first to Travelers' motion, Travelers contends that the Plaintiff cannot establish that a contract existed between herself and Travelers. The Plaintiff responds that, pursuant to C.R.S. § 38-33.3-313, she is an insured by law to be an insured under Travelers' policy covering the Association. That statute requires that a condominium association maintain property and liability insurance covering the common elements of the condominium. C.R.S. § 38-33.3-313(1). To comply with this requirement, the policy must provide that each unit owner is an insured person "with respect to liability arising out of such unit owner's interest in the common elements." C.R.S. § 38-33.3-313(4)(a) [*10] (emphasis added). Notably, nothing in the statute requires unit owners to be named as insureds with respect to the property insurance on common elements required by C.R.S. § 38-33.3-313(1)(a); the unit owners are insureds only as to the liability insurance for common elements required by C.R.S. § 38-33.3-313(1)(b).

The term "liability insurance" generally refers to the insured's -- here, the unit owner's -- liability to a third party, and the insured's ability to assert a claim under such a policy arises only after the insured's liability to a third party has been asserted. _Continental Western Ins. Co. v. Heritage Estates Mutual Housing Auth._, 77 P.3d 911, 913 (Colo. App. 2003), citing _Allstate Insurance Co. v. Huizar_, 52 P.3d 816, 820 (Colo. 2002). In other words, the statute requires the Association to obtain insurance on behalf of each unit owner for claims that third parties might make against such owners arising out of common elements of the property, but it does not require the Association to procure insurance on behalf of a unit owner to cover damages that the unit owner [*11] suffers herself due to common elements. Even assuming that the Plaintiff is correct that construction defects in the common elements are the source of her injuries here, she is asserting first-party claims of injury on her own behalf, not claims that would fall within the statutorily-required liability insurance. _Continental_, 77 P.3d at 913 (insured's first party claim could not invoke attorney fee provision found only in liability coverage).

Accordingly, the Plaintiff has not established that, by operation of law, she is deemed to be insured by Travelers for the claims she asserts here. She points to no other alleged contract between herself and Travelers sufficient to support the breach of contract claim, and thus, Travelers is entitled to summary judgment on the breach of contract claim asserted against it.

Turning to the Association's motion, the Association concedes that it is party to a contract with the Plaintiff, namely the "Declaration." Instead, it argues that the

Plaintiff cannot prove that the Association has breached any portion of the Declaration. The Plaintiff responds that the Association has breached Article 6.1(a) of the Declaration, which requires [*12] the Association to "maintain [and] repair . . . the Common Elements," in that the Association has failed to repair or replace "the defective sewer line that is leaking sewer gas" into her unit. In response, the Association does not dispute that Article 6.1(a) exists or that it would require the Association to repair a defective sewer line in a common element; rather, it contends that the Plaintiff cannot establish that an allegedly defective sewer line in a common element is the source of the odor the Plaintiff complains of. Thus, the question presented is whether the Plaintiff can show a genuine issue of fact as to whether the odor is coming from a defect in a common element.

To demonstrate the existence of a genuine issue of fact, the Plaintiff must point to specific evidence that, if accepted by the factfinder, would be sufficient to establish that fact. *BancOklahoma Mort. Corp. v. Capital Title Co., 194 F.3d 1089, 1097 (10th Cir. 1999).* It is not sufficient to merely assert the existence of facts; the Plaintiff must point to the specific evidence -- affidavits, depositions, exhibits, or other evidence -- that establish the fact. *Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998).* [*13] With regard to her assertion that a defective sewer line in a common element is the source of the odor, the Plaintiff points only to "Exhibit 6." [4] *Docket # 148 at 8-9.* Exhibit 6 is a one-page letter to the Plaintiff from Robert Kinning that recites the findings of an inspection of the Plaintiff's unit conducted by Kinning on September 5, 2003. Kinning states that "we discovered [] three different areas that indicate the presence of excessive methane gas." Kinning goes on to state that "Without doing major investigation and/or demolition work, it is difficult to pinpoint the exact cause of the methane odor. However, in my opinion, I suspect there may be a leak in the piping below the concrete floor." Kinning suggests that the Plaintiff "contact your builder and/or the plumbing contractor, as they would be the ones most familiar with the locations of the existing piping."

4   The Plaintiff's method of attaching exhibits, in which several disparate exhibits are contained in each electronically-filed attachment, violates D.C. Colo. Electronic Case Filing Procedures (Civil) § V.H.3 ("Each exhibit reference in a pleading, motion, brief of other electronic filing . . . shall be submitted to ECF as a separate ECF attachment.") (emphasis added).

[*14] Taking Kinning's letter in the light most favorable to the Plaintiff, the Court finds that the Plaintiff has raised a genuine issue of material fact with regard to whether the odor is resulting from a common element.

Although Kinning's letter is by no means definitive, one could reasonably read it to state an opinion that one potential source of the odor is a leak located below the concrete floor. [5] Notably, Kinning's letter reveals that he discovered elevated levels of methane gas in three separate locations, and there is nothing in the Plaintiff's theory of the case that requires her to prove that the odor is emanating from one and only one source. So long as one source of the odor is within a common element, the Plaintiff's breach of contract claim requires trial. Read generously in favor of the Plaintiff, Kinning's letter expresses an opinion that a leak below the concrete floor is one potential explanation for the odor. Given that Kinning did not opine as to any other potential source for the gas, the jury might find that a leak below the concrete floor is the most likely explanation for the odor. Not without some trepidation, [6] the Court finds this to be sufficient [*15] to raise a genuine issue of fact requiring trial of the breach of contract claim against the Association. [7] Accordingly, the Association's motion for summary judgment on the breach of contract claim is denied.

5   No party has addressed what constitutes a "common element," but all seem to assume that a leak below the concrete floor would fit that definition.

6   The Court is, quite frankly, struck by the degree of equivocation in Kinning's letter -- he states that he "suspects" that there "may be" a leak. This is a far cry from the definitive expert opinion that a plaintiff typically proffers in support of a claim. Indeed, given Kinning's own apparent uncertainty as to his opinion, the Court has some doubt that the Plaintiff could ever prove, by a preponderance of the evidence, that the odor is coming from a common element based on Kinning's opinion alone. Moreover, Kinning's suggestion to the Plaintiff -- that she contact a plumber who might be more familiar than Kinning with the locations of the existing piping -- raises concerns as to whether Kinning is even qualified under Fed. R. Evid. 702 to render such an opinion. The Court notes that the Defendants previously moved to exclude Kinning's testimony under Rule 702 (# 158), but that motion was denied (# 179) with leave to refile. To date, the Defendants have not refiled that motion, and thus, the Court will presume for purposes of this motion that Kinning's opinion testimony will be admissible. Nevertheless, the Court has serious doubts as to whether the breach of contract claim against the Association will survive a Fed. R. Civ. P. 50 motion at the close of the Plaintiff's case at trial.

[*16]

7   The Association makes a perfunctory argument that the Plaintiff cannot prove that the Association's breach of the Declaration caused the Plaintiff to suffer damages. The Plaintiff asserts that she was forced to move out of her apartment due to continuing exposure to the odor, and that she subsequently had to move for tax abatement on the property. Taken in the light most favorable to the Plaintiff, this is sufficient to prove damages resulting from the Association's alleged breach of the Declaration.

### C. Battery and assault claims

Both Defendants seek summary judgment on the battery and assault claims on the same grounds. Colorado recognizes the tort of battery on the terms set forth in section 18 of the Restatement (Second) of Torts. *White v. Muniz,* 999 P.2d 814, 816 (Colo. 2000). To prove that claim, the Plaintiff must show that: (i) the Defendant acted, intending to cause a harmful or offensive contact with her, and (ii) that an offensive or harmful contact resulted. *Id.* The intent element applies to both the intent to cause the [*17] contact, and the intent that the Plaintiff will find the contact to be harmful or offensive, although the Plaintiff need not show that the Defendant intended the contact to result in actual harm or injury. *Id.* at 818, 819. The same principles apply to a claim for assault, *id.* at 815 n. 3, but the Plaintiff need only show that the Defendant acted, intending to cause her to the apprehension of a harmful or offensive contact, not that such a contact actually resulted. *Bohrer v. DeHart,* 943 P.2d 1220, 1224 (Colo. App. 1996).

Both Defendants contend that the Plaintiff cannot show that they acted to cause her to suffer an offensive contact or the apprehension of such a contact. The Plaintiff responds that the contact in question is her exposure to the odor and alleged sewer gas, and that the Defendants' intentions can be inferred from their refusal to repair the leak and alleged instructions to others not to acknowledge or attempt to locate the leak. Such a theory, even if supported by evidence, would be insufficient to establish an assault or battery as a matter of law.

Both claims require that the Defendants commit an act that causes [*18] a harmful contact, or the apprehension of such a contact. Here, the Plaintiff does not allege that the Defendants committed the initial act that caused her to be exposed to the odor and gas in the first instance -- that act she attributes to the builder, Genesee, in the form of defective construction. Moreover, the Plaintiff does not allege that, once on the scene, the Defendants took any action to magnify her exposure to the gas, *e.g.* by further opening a leak in a pipe, or by creating additional leaks. Thus, the Plaintiff has not alleged an act by either Defendant that was the direct and proximate cause of her being exposed to the odor and gas. Rather, the Plaintiff only alleges that the Defendants did not take appropriate remedial steps to intervene to stop an ongoing offensive contact that the Plaintiff was suffering as a result of actions by a third party. Put simply, the Plaintiff does not allege that the Defendants caused the contact to occur, only that they failed to stop it from occurring.

Nothing in Colorado law or the Restatement appears to contemplate expanding the scope of the torts of battery and assault to include liability for persons who fail to intercede [*19] to prevent or discontinue an offensive contact being caused by another. Indeed, the Restatement notes that while "[t]here is perhaps no essential reason why, under modern law, liability for batter might not be based on inaction, where it is intended to result and does result in a harmful or offensive contact . . . no such case has arisen and what little authority there is denies the liability." Restatement (Second), Torts, § 14, comment c. The Plaintiff cites to no authority adopting her expanded theory of tort liability in these circumstances, and thus, the Court finds that liability in assault or battery cannot lie against an individual who fails to act to halt an ongoing offensive contact caused by another, even if the individual's failure to act is premised on an intent that the harmful contact continue. The Defendants are entitled to summary judgment on both the battery and assault claims against them in these circumstances.

### D. Breach of fiduciary duty

Travelers seeks summary judgment on the Plaintiff's breach of fiduciary duty claim, arguing, among other things, that she cannot establish that Travelers owed her any such duty. In [*20] response, the Plaintiff offers a somewhat unclear argument to the effect that because the Association owed the Plaintiff a fiduciary duty, and because Travelers is an agent of the Association, Travelers "stands in the shoes of the principal with regard to third persons," and thus, owes the Plaintiff the same fiduciary duty. In support of this somewhat novel syllogism, the Plaintiff cites only to *Moses v. Diocese of Colo.,* 863 P.2d 310, 322 (Colo. 1993). The alleged relevance of *Moses* -- a case in which the Colorado Supreme Court affirmed a finding that a bishop owed a fiduciary duty to a parishioner who came to complaint of sexual abuse at the hands of a priest, due to the bishop occupying a superior position to the parishioner and his assumption of a duty to act in the parishioner's best interests, 863 P.2d at 322-23 -- to the Plaintiff's argument is not apparent. The case clearly does not stand for the proposition that Plaintiff urges -- that where a person owes a fiduciary duty to another, all agents of that person owe a similar fiduciary duty to the other. Moreover, the Plaintiff appears to simply assume facts essential to her argument -- [*21] *e.g.* that the Association owes her a fiduciary duty,

2007 U.S. Dist. LEXIS 19238, *

that Travelers acts as an agent of the Association -- rather than identify specific evidence and legal authority which establishes those facts. Accordingly, the Court finds that the Plaintiff has failed to carry her burden of establishing a genuine issue of fact as to whether Travelers owed her a fiduciary duty, and thus, Travelers is entitled to summary judgment on her claim that it breached such a duty.

The Association argues that "Plaintiff's breach of fiduciary duty claim fails not because of the absence of duty, but because of a complete absence of any proof that a common element is responsible for Plaintiff's complaints." Docket # 140-2 at 13. Thus, the viability of this claim, like the breach of contract claim against the Association, turns on the question of whether the Plaintiff can demonstrate a genuine issue of fact as to whether at least one source of the odor and gas is in a common element of the condominium. For the same reasons stated *supra.*, the Court finds that the Plaintiff has made such a showing -- albeit just barely -- and that the breach of fiduciary duty claim should proceed to trial. However, the [*22] same concerns discussed by the Court as to the definitiveness and admissibility of Kinning's opinion -- the lynchpin of both the Plaintiff's breach of contract and breach of fiduciary duty claims -- apply with equal force to this claim as well. Nevertheless, the Association's motion for summary judgment on this claim is denied.

### E. Negligent infliction of emotional distress

To prove a claim for negligent infliction of emotional distress under Colorado law, the Plaintiff must establish: (i) that the Defendant was negligent; (ii) that as a result of such negligence, she was subjected to an unreasonable risk of bodily harm; (iii) that she was caused to fear for her own safety; (iv) that such fear is shown by either physical consequences or long-continued emotional disturbance; and (v) that the fear is the cause of the damages claimed. *Scharrel v. Wal-Mart Stores, Inc.*, 949 P.2d 89, 93 (Colo. App. 1997).

Both Defendants' motions challenge the Plaintiff's ability to establish the first and second elements of the claim, *i.e.* that the Defendant was negligent, and that such negligence created an unreasonable risk of bodily harm to the Plaintiff. [8]

8   The Court notes that although the Association asserts in its motion that the Plaintiff cannot establish the element of unreasonable risk of harm and promises an analysis of that contention in its brief, *Docket # 140* at 5, its brief addresses only the Plaintiff's inability to establish the first element. *Docket # 140-1* at 14-15 (titled "The Association cannot be Negligent where there is no Duty"). Nevertheless, because the Association

does not bear the burden of proof at trial, it need only identify the elements of the claim that it contends the Plaintiff cannot establish, and the burden is then on the Plaintiff to demonstrate an issue of fact with regard to each challenged element. *Celotex*, 477 U.S. at 323 ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the evidence, if any, it believes demonstrates the absence of a factual issue on an element). The Association is not required to address each and every challenged element in an accompanying brief, particularly where its contention is that there is no evidence whatsoever to support that element. This Court's format requirements for summary judgment motions, *see* MSK Practice Standards (Civil) V.H.3.b.1, are designed to give the non-movant with the burden of proof at trial adequate notice of the grounds for the motion, even if no supporting brief is admitted. Indeed, by encouraging the non-movant to adopt a similar format for its response, MSK Practice Standards (Civil) V.H.3.b.2, the Court seeks to ensure that the non-movant meets each challenge to an element head on. The Association's motion complies with the Practice Standards, and thus, gave adequate notice to the Plaintiff as to the elements being challenged, even if the Association's brief did not expressly address arguments as to that element. However, the Plaintiff's response brief did not adhere to the Practice Standards, and thus, did not address the Plaintiff's ability to establish the second element of this claim.

[*23]   As to the first element, the Association again confines its argument to be that the claim fails because the Plaintiff cannot prove that the odor and gas are emanating from a common element. *Docket # 140-2* at 13 ("To survive summary judgment, Plaintiff must present an evidentiary fact that demonstrates more than the mere possibility that her odor complains are related to a common element.") For the reasons -- and caveats -- stated previously with regard to the breach of contract and breach of fiduciary duty claims, the Court finds that the Plaintiff has adequately presented an issue of fact with regard to the Association's negligence towards her.

Travelers also argues that the Plaintiff cannot establish Travelers' negligence because she can show no duty owed to her by Travelers. The Plaintiff's response to this argument is sufficiently terse that it can be quoted here in full: "Travelers claims it owes no duty to plaintiff because she is not an insured of Travelers. This bogus claim has been dealt with supra. [with regard to the breach of contract claim against Travelers]. Plaintiff is an

insured of Travelers by statute." For the same reasons discussed above in the context of [*24] the breach of contract claim against Travelers, the Plaintiff's argument that she is an insured of Travelers with regard to the issues here is without merit. Because this is the sole argument proffered by the Plaintiff with regard to an alleged duty owed by Travelers to her, the Court finds that Travelers is entitled to summary judgment on the negligent infliction of emotional distress claim.

The Court also finds that the Plaintiff has failed to demonstrate a genuine issue of fact as to whether she was exposed to a risk of bodily harm. As noted above, the Plaintiff responded only to the arguments raised in the Association's brief, not its motion, and thus, did not purport to assert the existence of any facts necessary to establish this element. Nevertheless, Travelers raised the same argument in its own motion, and the Court will consider the Plaintiff's response to that issue in Travelers' motion to be asserted by the Plaintiff with regard to both Defendants' motions. Nevertheless, the Plaintiff's response is inadequate. The Plaintiff addresses this issue in a single sentence, stating "Travelers' inaction caused plaintiff fear of continual exposure to sewer gas, a highly toxic substance. [*25] " *Docket #* 149 at 9. In support of this assertion, she refers back to item no. 7 in her "Statement of Facts." That item states, in pertinent part, "All this time she was living in sewer gas which was highly toxic, and bad for her health. This created a real risk of harm to her." *Docket #* 149 at 2-3. However, the Plaintiff cites to no evidence in support of any assertion in item no. 7, much less identify evidence that support her contention that sewer gas is "highly toxic" and "bad for her health." In opposing a motion for summary judgment, the Plaintiff may not simply rely on unsupported assertions, but must point to specific evidence establishing such a contention. *Adler, 144 F.3d at 671.* Because the Plaintiff does not point to evidence supporting her contention that the Defendants' negligence subjected her to an actual risk of bodily harm, she fails to carry her burden of demonstrating a genuine issue of fact as to the second element of her claim of negligent infliction of emotional distress. Accordingly, both Defendants are entitled to summary judgment on this claim.

## F. Breach of duty of good faith

Both Defendants seek summary judgment on the Plaintiff's [*26] claim for breach of the duty of good faith, and all parties' arguments on this issue are essentially the same as those raised with regard to the Plaintiff's breach of contract claims -- namely, that Travelers denies that there is any contractual agreement with the Plaintiff for a good faith claim to attach to, that the Plaintiff contends that she is contractually an insured of Travelers, that the Association denies that it breached any

contractual obligation to repair the alleged leak because the Plaintiff cannot establish that it is located in a common element, and that the Plaintiff contends that Kinning's letter establishes that the leak is located in a common element.

For the same reasons set forth with regard to the breach of contract claim, the Court finds that Travelers is entitled to summary judgment on this claim, as the Plaintiff cannot show that Travelers owed her any contractual duty that would support a duty to act in good faith. Similarly, the Association is not entitled to summary judgment on this claim at this time, as the Plaintiff has raised a genuine issue of fact as to whether the leak is located in a common element.

## G. Civil conspiracy

To prove a claim [*27] for civil conspiracy under Colorado law, the Plaintiff must prove: (i) a meeting of the minds among two or more persons; (ii) to establish a common object; (iii) one or more unlawful overt acts in furtherance of that object; and (iv) resulting damages. *Walker v. Van Laningham,* 148 P.3d 391, 396 (Colo. App. 2006). Both Defendants argue that the Plaintiff cannot establish the existence of any meeting of the minds among two or more people, and Travelers further argues that the Plaintiff also cannot show any unlawful objective or unlawful overt act. The Plaintiff responds by stating that "Genesee/[the Association] agreed to do nothing more to repair plaintiff's sewer leak," that "[the Association] and Travelers agreed and conspired to hector plaintiff's attorney to disrupt and defeat a valid insurance claim," and that "[the Association's] attorneys, hired by Travelers, filed the phony grievance against plaintiff's lawyer." *Docket #* 148 at 13-14. The Plaintiff also alleges that Travelers engaged in various actions, "working in concert with [the Association] and its alter ego Genesee [to] delay and derail plaintiff's valid first party insurance claim." *Docket* [*28] *#* 149 at 9-10.

None of the Plaintiff's allegations in Docket # 148, her response to the Association's motion, cites to any evidence in support of her assertions of various agreements. Although it is not required to comb the record for evidence to support the Plaintiff's claims, *Adler,* 144 F.3d at 671, the Court has also reviewed the Plaintiff's "Statement of Facts" in her response to the Association's motion, and finds nothing therein that asserts the existence of any meeting of the minds between the Association and any other entity, much less any assertion that itself points to supporting evidence. Accordingly, she has failed to carry her burden of showing a genuine issue of fact as to an essential element of her civil conspiracy claim against the Association, and the Association is entitled to summary judgment on this claim.

2007 U.S. Dist. LEXIS 19238, *

The Plaintiff's assertions of various meetings of the minds in Docket # 149, her response to Travelers' motion, cites to item no. 8 in her Statement of Facts in support. Item no. 8 asserts that "In January 2004, as a result of plaintiff's claim and at the instance (sic) of defendant Travelers, a Denver law firm filed a claim against plaintiff's [*29] lawyer, claiming he was engaged in the unauthorized practice of law in Colorado. The claim was rejected by the Commission on the Unauthorized Practice of Law in April 2004, which found that plaintiff's lawyer was specifically authorized to represent plaintiff, but during the time it was pending, the law firm refused to community with my lawyer and kept sending letters to me to call them." *Docket* # 149 at 3. The Court notes several defects in the Plaintiff's reliance on this assertion as establishing the challenged elements of the civil conspiracy claim. First, the Plaintiff offers no citation to any allegation other than item no. 8 supporting her assertions of other meetings of the mind between Travelers and others, and thus, the Court confines the remainder of its consideration to the alleged conspiracy referenced in that single item. Second, the Court notes that neither item no. 8 nor the body of the Plaintiff's brief on the civil conspiracy issue cites to any evidence in the record. This alone is sufficient to grant summary judgment to Travelers. *Adler, supra.*

Third, even if it were arguably sufficient to allege a meeting of the minds between Travelers and [*30] the "Denver law firm," the allegation fails to adequately allege the existence of unlawful acts in furtherance of the conspiracy. The only acts allegedly committed in furtherance of the Travelers-"Denver law firm" conspiracy are the filing of a complaint against the Plaintiff's lawyer, and the sending of letters to the Plaintiff. Neither of these acts are unlawful. The Plaintiff asserts only that the complaint against her lawyer was rejected as unfounded. The mere filing of a complaint that turns out to be unfounded is not an unlawful act sufficient to support a civil conspiracy claim. *See Walker,* 148 P.3d at 396 ("we perceive no reason why an unfounded complaint necessarily implicates a deliberate falsehood or an unlawful act"). Moreover, even assuming that Travelers conspired with the law firm to send letters to the Plaintiff instead of her counsel, such an action might implicate the law firm's ethical obligations, but there is no reason to believe that this act is somehow unlawful.

Accordingly, the Plaintiff has failed to carry her burden with regard to the civil conspiracy claim against Travelers, and Travelers is therefore entitled to summary judgment on that [*31] claim.

## H. Remaining motions

### 1. Genesee's Motion *in Limine*

Genessee seeks (# **156**) to exclude from trial any evidence of the valuation placed on the Plaintiff's condominium by the county tax assessor, on the grounds that such an assessment constitutes inadmissible expert opinion, and is unduly prejudicial in that neither Genesee nor any party other than the Plaintiff participated in the valuation of the property. The Plaintiff opposes the motion, arguing that the valuation records are government records admissible over a hearsay objection pursuant to Fed. R. Evid. 803(8)(B).

The Court denies Genesee's motion without prejudice at this time. Motions *in limine* directed to the admissibility of evidence often present questions that are difficult to resolve in the abstract. Here, it is not completely clear what documents the Plaintiff intends to offer, the witness she intends to offer them through, and the purpose for which they are being offered. Moreover, there is no assurance that, in light of the rulings herein and other events that may occur prior to trial, the documents will be offered at all. The Court declines to make a [*32] speculative ruling on the admissibility of the documents at this time. Rather, Genesee may interpose an objection at trial when the documents or other objectionable evidence is first proffered, and the Court will entertain the objection at that time.

### 2. Travelers' Motion *in Limine*

Travelers moves (# **157**) to exclude the testimony of several witnesses it contends were not disclosed during discovery. The Plaintiff did not respond to this motion.

Because the Court grants Traveler's summary judgment motion in its entirety, this motion by Travelers is rendered moot. The Court is cognizant that the Association has purported to join in this motion, but because the Association has not moved separately for the requested relief as it relates particularly to the Association, it has merely joined in a motion that has become moot. Accordingly, the motion is denied as moot. However, all parties are advised that the Court will exclude the testimony of any witness who was not properly disclosed during discovery if there has been prejudice.

### 3. Plaintiff's Motion for Costs and Fees

The Plaintiff requests (# **161**) both costs and attorney's fees for "prepar[ing] to defend" [*33] against various affirmative defenses asserted by the Defendants, but withdrawn at the time of the filing of the Joint Pretrial Order. The Plaintiff argues that these defenses "lacked substantial justification," and that as a result, she is entitled to an award of costs and attorney's fees relating to these defenses under C.R.S. § 13-17-102(4) and § 13-16-108.

2007 U.S. Dist. LEXIS 19238, *

The Court denies this motion without prejudice, as the case has yet to reach its conclusion. Just as the Plaintiff believes she is entitled to costs and fees (although the Court makes not findings as to the merits of that claim of entitlement, nor to the applicability of the statutory vehicle by which she claims them) for defenses that have been withdrawn, the Defendants may also ultimately be entitled to costs and fees for claims unsuccessfully asserted by the Plaintiff. Rather than engage in piecemeal review of each unsuccessful claim or defense individually, the Court finds that the better course of action is to await the conclusion of this litigation to consider whether, and to what extent, any party is entitled to costs and/or fees.

## CONCLUSION

For the foregoing reasons, the Association's [*34] Motion for Summary Judgment (# 140) is **GRANTED IN PART,** insofar as the Association is entitled to summary judgment on the Plaintiff's battery, assault, negligent infliction of emotional distress, and civil conspiracy claims, and **DENIED IN PART,** insofar as there remains a genuine issue of fact for trial as to the Plaintiff's breach of contract, breach of fiduciary duty, and breach of the duty of good faith claims as against the Association. Travelers' Motion for Summary Judgment (# 141) is **GRANTED** in its entirety. The Court will enter judgment [9] in favor of Travelers on all claims asserted against

it, and the caption of the case is amended to delete Travelers as a party to his action. Genesee's Motion *In Limine* to Exclude Evidence Concerning County Assessor's Valuation of Property (# 156) is **DENIED** without prejudice to a timely objection at trial. Traveler's Motion *In Limine* to Exclude Plaintiff's Undisclosed Trial Witnesses (# 157) is **DENIED AS MOOT.** The Plaintiff's Motion for Costs and Fees (# 161) is **DENIED** without prejudice to refiling at the conclusion of the litigation involving the Plaintiff.

9   Because some portions of the Plaintiff's claims against Travelers purport to be derivative of claims lying against the Association, and thus turn on many of the same operative facts, the Court finds it inappropriate to enter a final judgment against Travelers at this time pursuant to Fed. R. Civ. P. 54(b). A judgment in favor of Travelers and against the Plaintiff will issue when the litigation by the Plaintiff against the Association concludes.

[*35]  Dated this 16th day of March, 2007

**BY THE COURT:**

Marcia S. Krieger

United States District Judge