**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 07-cv-00355-RPM-MEH

LOREE McCORMICK-RICE,
CASSIDY RICE, through her next friend Loree McCormick-Rice,

     Plaintiffs,

v.

CHARLES DESHAZER, in his official and individual capacity,
DILLON COMPANIES, INC. d/b/a KING SOOPERS, INC., a Kansas corporation, and
EARNEST SANDS,

     Defendants.

─────────────────────────────────────────────────────────────

**PLAINTIFFS' RESPONSE TO DEFENDANT KING SOOPERS' AND EARNEST
SANDS' MOTION FOR SUMMARY JUDGMENT**

─────────────────────────────────────────────────────────────

Plaintiffs, by and through counsel, David A. Lane and Qusair Mohamedbhai of KILLMER, LANE & NEWMAN, LLP hereby respond to *Defendant King Soopers' and Earnest Sands' Motion for Summary Judgment* [Doc. 42] as follows:

## I. INTRODUCTION

This is an action for damages against Aurora police officer Charles Deshazer ("Defendant DeShazer"), King Soopers security guard Earnest Sands ("Defendant Sands"), and King Soopers ("Defendant King Soopers") for constitutional violations and battery committed against Plaintiff Loree McCormick-Rice ("Ms. McCormick-Rice") and Plaintiff Cassidy Rice ("Ms. Rice") (collectively referred to as "Plaintiffs").

Since Defendants Sands and King Soopers have brought this summary judgment motion, this Response primarily focuses on the conduct of Defendants Sands and King Soopers – not

Defendant DeShazer.  Defendant DeShazer's conduct is equally, if not more egregious than Defendant Sands' actions.

On June 17, 2006, Defendant Sands first observed Plaintiffs as they entered the King Soopers located at 15250 E Mississippi Avenue, Aurora, Colorado 80012.  Ex. 3. Sands Depo. 19:14-20:1.  Defendant Sands is a former police officer who is employed as a security guard for King Soopers.  Ex. 3. Sands Depo. 11:8-12:5.  Defendant Sands did not know what occurred concerning Plaintiffs and Defendant DeShazer outside the King Soopers.  Ex. 3. Sands Depo. 27:16-24.  Defendant Sands believed that Plaintiffs' were claiming that unknown parties in the parking lot had called them "niggers." Ex. 3. Sands Depo. 19:14-20:16.  Rather than assist Plaintiffs, he specifically noted that Plaintiffs were only approaching other black customers for assistance.  Ex. 3. Sands Depo. 20:18-21:17.  Defendant Sands believed that Plaintiffs were acting belligerently and inciting a disturbance inside the store.  Ex. 3. Sands Depo. 85:13-87:9; 96:7-98:18.

After Plaintiffs left the store, Defendant Sands heard Ms. McCormick-Rice swear at an Aurora Police Officer as she was driving away from the King Soopers parking lot.  Ex. 3. Sands Depo. 34:20-35:18; 39:21-39:25; 99:24-100:17.  He observed Defendant DeShazer make a U-turn, activate his police lights, and initiate a traffic stop of Plaintiffs' van.  Ex. 3. Sands Depo. 45:20-46:4; 48:5-10; 49:20-50:17.  Defendant Sands subsequently overheard customers suggesting that a police officer may need assistance in an arrest.  Ex. 3. Sands Depo. 53:3-54:1. Based on his previous law enforcement training, Defendant Sands ran to the location of Defendant DeShazer' parked, unmarked Aurora Police Department vehicle and Plaintiffs' van. Ex. 3. Sands Depo. 65:17-21; June 17, 2006 video of Plaintiffs' arrest herein attached as <u>Exhibit</u>

5 (Chapter 2).  As a King Soopers security guard, Defendant Sands believed that it was his duty

to preserve the peace.  Ex. 3. Sands Depo. 78:2-7; 80:1-12.  Defendant Sands was the first King

Soopers security guard to reach the scene.  Exhibit 5 (Chapter 2); Ex. 3. Sands Depo. 65:17-21.

Defendant Sands witnessed Defendant DeShazer arresting Plaintiffs.  Ex. 3. Sands Depo.

54:6-55:1.  Defendant DeShazer is a physically large police officer.  Ex. 1. DeShazer Depo.

81:8-21.  Ms. Rice is a twelve-year-old girl and Ms. McCormick-Rice is an infirm woman who

carries a large oxygen nebulizer tank for her asthma.  *Id.;* Ex. 2. McCormick-Rice Depo. 8:9-22;

22:16-17.  Defendant Sands incorrectly believed Plaintiffs were resisting Defendant DeShazer's

arrest.  Ex. 3. Sands Depo. 56:21-57:3; 101:11-102:9.  At no time did Defendant Sands observe

any violation of law that would even remotely suggest that Defendant DeShazer should have

arrested Plaintiffs.  Ex. 3. Sands Depo. 46:18-47:7; 63:6-17.  Defendant Sands did not know why

Defendant DeShazer was arresting Plaintiffs.  In fact, Defendant Sands never once asked

Defendant DeShazer why he was arresting Plaintiffs.  Ex. 3. Sands Depo. 63:11-17.

As Defendant Sands headed towards Defendant DeShazer, he placed his hand on

Defendant DeShazer's shoulder.  Ex. 1. DeShazer Depo. 95:1-21; Ex. 3. Sands Depo. 57:12-22;

78:8-19.  Defendant DeShazer said nothing nor responded ~~otherwise~~ to Defendant Sands.  *Id.*

Thereafter, Defendant Sands asked Defendant DeShazer twice if he required assistance arresting

Plaintiffs.  *Id.*  Defendant Sands instructed Defendant DeShazer that he only needed ***TO*** ask for

his assistance and he would have it.  *Id.*  Defendant DeShazer complied with Defendant Sands'

suggestion, and asked Defendant Sands to assist in arresting Plaintiffs.  *Id.*  In deposition,

Defendant DeShazer testified that this made him feel that it was King Soopers' policy that if he

requested a security guard for assistance during an arrest, the security guard would assist in the

arrest.  Ex. 1. DeShazer Depo. 152:14-153:2.  At no time prior to Defendant Sands asking if he could assist in the arrest did Defendant DeShazer indicate he needed any assistance in arresting Plaintiffs.  *See, generally,* Ex. 1. DeShazer Depo. 95:1-21; Ex. 3. Sands Depo. 57:12-22; 78:8-19.  Per King Soopers' policy and/or actual practice, Defendant Sands had no responsibility in a situation such as this once law enforcement arrives.  Ex. 3. Sands Depo. 61:1-6.

Defendant DeShazer threw Ms. Rice to the ground violently, damaging Ms. Rice's shoulder and collarbone.  Ex. 4. Rice Depo. 74:9-16; 120:11-121:2; 126:4-128:9.  Thereafter, Defendant Sands kicked Ms. Rice during his assistance to Defendant DeShazer with Ms. Rice's arrest that was defenseless on the ground while being handcuffed by Defendant DeShazer.  Ex. 4. Rice Depo. 66:7-17; 68:6-8; 181:25-182:25; 184:17-189:10.  Defendant Sands watched over Ms. Rice while she was handcuffed and further abused by Defendant DeShazer.  The arrest is substantially captured on video through King Soopers' security cameras.  Exhibit 5 (Chapter 2).

After the arrests, Defendant Sands wrote a report praising Defendant DeShazer's arrest, specifically noting that in his former law enforcement opinion, Defendant DeShazer did not use excessive force during Plaintiffs' arrest.  Defendant Sands' Report herein attached as Exhibit 6. To this day, Ms. Rice has extreme emotional distress as a result of the abuse she suffered at the hands of Defendants DeShazer and Sands, which includes bedwetting, crying in her sleep, fear of sleep, outbursts, possible suicidal thoughts, and acting out.  Ex. 4. Rice Depo. 88:16-92:23; 95:4-98:24.  Plaintiffs were generally charged with obstruction, resisting arrest and failure to obey a lawful order.  Plaintiffs' City of Aurora Summonses and Complaints herein attached as Exhibit 7.  Subsequently, all criminal charges against Plaintiffs were dismissed by the City of Aurora. Ex. 1. DeShazer Depo. 26:23-27:2.

This litigation has been hotly contested by all parties. A cursory review of Defendants' Motion for Summary Judgment reveals that Plaintiffs' descriptions and recollections of the events of June 17, 2006 differ substantially from Defendant DeShazer's and Defendant Sands' memories. The parties cannot even agree to the substance of Plaintiffs' arrest video.

Defendants' Motion for Summary Judgment fails to inform the Court of the complete factual basis of Defendant Sands' involvement during Ms. Rice's arrest. In an effort to minimize Defendant Sands' willful participation during Ms. Rice's arrest, Defendants' Motion for Summary Judgment ignores Ms. Rice's detailed and specific testimony concerning Defendant Sands. Ms. Rice, during her deposition while watching the video of Plaintiffs' arrest, precisely described when and how Defendant Sands kicked her. The extent of Defendants Sands' and King Soopers' responsibility for Plaintiffs' injuries is an issue of fact for the jury. Defendants Motion for Summary Judgment as to Ms. Rice should be denied in its entirety.

## II. RESPONSE TO DEFENDANTS' STATEMENT OF "UNDISPUTED" FACTS

1. Admit.

2. Admit.

3. Admit in part. Defendant DeShazer did testify that this particular King Soopers was in a high crime area. This testimony demonstrates Defendant DeShazer's personal belief as to the crime rate in the area, but not any objective evidence of the actual crime rate of the area.

4. Admit.

5. Admit.

6. Admit.

7. Denied. Defendant DeShazer would greet Defendant Sands as he entered King Soopers when he shopped. Ex. 1. DeShazer Depo. 150:17-151:10. Defendant DeShazer remembered one meeting between himself and King Soopers security in which it was discussed complaints of customers unlawfully parking in handicapped parking sports. *Id.* Contrarily, Defendant Sands' testified in three years of working as King Soopers' security, he never saw or spoke to Defendant DeShazer before the night of Plaintiffs' arrest. Ex. 3. Sands Depo. 4:17-22; 28:23-29:8.

8. Admit.

9. Admit.

10. Admit.

11. Admit in part. The handicapped placard in Ms. McCormick-Rice's vehicle was clearly visible. Ex. 2. Ms. McCormick-Rice Depo. 52:7-14. Defendant DeShazer pretended to not see the handicapped placard, and harassed Plaintiffs because they were black. Ex. 2. Ms. McCormick-Rice Depo. 53:14-54:6; 83:4-16. Defendant DeShazer asked Ms. McCormick-Rice where her handicapped placard was because he could not see it. Ex. 2. McCormick-Rice Depo. 83:4-16. Defendant DeShazer opened Ms. McCormick-Rice's van door and examined the handicapped placard. *Id.* Defendant DeShazer then examined the oxygen nebulizer found on the back seat of Ms. McCormick-Rice's van. *Id.* As Defendant DeShazer walked away he referred to Plaintiffs as "fucking niggers.. *Id.*

12. Admit.

13. Admit.

14. Admit in part.  Defendant DeShazer waited in the parking lot in his vehicle, lights on, engine running, to confront Plaintiffs after they left King Soopers.  Ex. 2. Ms. McCormick-Rice Depo. 261:3-21.  Ms. McCormick-Rice yelled "fuck-you" in the direction of Defendant DeShazer.  Ex. 3. Sands Depo. 39:21-25. Thereafter, Defendant DeShazer made a U-Turn and chased Ms. McCormick-Rice's van in his unmarked police car, with the police lights flashing.  Ex. 3. Sands Depo. 45:24-46:4.  Defendant Sands did not observe Ms. McCormick-Rice violate any laws at any time.  Ex. 3. Sands Depo. 41: 19-21.  Defendant DeShazer stopped Ms. McCormick-Rice's vehicle because he believed that she would return to the King Soopers to escalate the situation by further looking for witnesses who would support her.  Ex. 1. DeShazer Depo. 74:4-7.

15. Admit.

16. Admit.

17. Denied.  Before Defendant Sands spoke to Defendant DeShazer, he believed that Ms. Rice was resisting arrest, based on his own observations.  Ex. 3. Sands Depo. 56:21-57:3. Thereafter, Defendant Sands approached Defendant DeShazer and requested twice that he be allowed to assist Defendant DeShazer with Plaintiffs' arrests.  Ex. 1. DeShazer Depo. 95: 12-16.  Defendant Sands instructed Defendant DeShazer on how to procure his assistance during Plaintiffs' arrests.  *Id.*  Defendant DeShazer believed that Defendant Sands was complying with King Soopers' policy when Defendant Sands informed Defendant DeShazer that he needed to first request assistance before Defendant Sands would assist in Plaintiffs' arrest. Ex. 1. DeShazer Depo. 152: 18-153:2.

18. Denied.  After Plaintiffs' arrest, Defendant DeShazer was overheard by Ms. McCormick-
Rice telling other officers that everyone needed to get their stories straight.  Ex. 2.
McCormick-Rice Depo. 219:5-10.  In Defendant Sands' report of Plaintiffs' arrest,
Defendant Sands described Ms. McCormick-Rice as belligerent and attempting to insight a
disturbance inside the King Soopers' store.  Defendant Sands' Report herein attached as
Exhibit 6.  Defendant Sands further stated in his report that Defendant DeShazer did not call
Plaintiffs' "fucking nigger" even though Defendant Sands' testified in his deposition that he
had "no clue" what was stated in the parking lot between Plaintiffs and Defendant Sands.
Exhibit 6; Ex. 3. Sands Depo. 27:16-24; 19:14-20:17.  Defendant Sands believed that
Plaintiffs were very combative towards Defendant DeShazer, and he believed that Defendant
DeShazer did not use excessive force when arresting Plaintiffs.  Exhibit 6; Ex. 3. Sands
Depo. 57:8-58:15.

19. Denied.  Defendant Sands kicked Ms. Rice while Defendant DeShazer assisted during the
arrest.  Ex. 4. Rice Depo. 66:7-17.  Ms. Rice confirmed Defendant Sands kicked her while
she viewed the video during her deposition.  Ex. 4. Rice Depo. 68:6-8; 181:25-187:23.  June
17, 2006 video of Plaintiffs' arrest herein attached as Exhibit 5 (Chapter 2)[1].  Ms. Rice
testified that the video does not show Defendant Sands kicking her because the other tall
King Soopers security guard was obstructing the camera view.  Ex. 4. Rice Depo. 185:7-12.
Ms. Rice testified that Defendant Sands kicked her in the ribs at precisely time index
21:50:45.  Exhibit 5; Ex. 4. Rice Depo. 187:19-23.

20. Admit.

---

[1] Plaintiffs' arrest video (Exhibit 5 – Chapter 2) can also be viewed on Google Video at
http://video.google.com/videosearch?hl=en&sitesearch=&q=mccormick-rice or by searching using term
"McCormick-Rice" in the Google Video search field.

21. Denied.  *See ¶ 19, supra.*  Ms. Rice testified she was not physically bruised by Defendant Sands' kick.  Ex. 4. Rice Depo. 187:22-24.  However, Ms. Rice has had extreme emotional distress as a result of her beating by Defendants DeShazer and Sands, which includes bedwetting, crying in her sleep, fear of sleep, outbursts, possible suicidal thoughts, and acting out.  Ex. 4. Rice Depo. 88:16-93:7; 95:20-97:4.

22. Admit in part.  Ms. McCormick-Rice testified that during the arrest, Defendant DeShazer told her "do you still want to fuck with me?"  Ex. 2. McCormick-Rice Depo. 217:2-219:23.  After her arrest, Defendant DeShazer refused to give Ms. McCormick-Rice her oxygen inhaler and threatened to send Ms. McCormick-Rice to jail.  *Id.*

23. Admit.

24. Admit.

## II. PLAINITFFS' ADDITIONAL UNDISPUTED FACTS

1.  All criminal charges were dismissed against Plaintiffs by the City of Aurora.  Ex. 1. DeShazer Depo. 26:23-27:2; Ex. 2. McCormick-Rice Depo. 245:5-8.

2.  Defendant Sands has law enforcement training.  He was a police officer in Nebraska for four years from 1975-1979.  Ex. 3. Sands Depo. 11:8-12:3.

3.  As a security guard, Defendant Sands has no responsibility to a situation if there are police at the scene.  Ex. 3. Sands Depo. 61:1-6.

4.  Defendant Sands did not observe any violation of law that would suggest that Defendant DeShazer should have arrested Plaintiffs.  Ex. 3. Sands Depo. 62:24-63:19.  Defendant Sands did not know why Defendant DeShazer was arresting Plaintiffs.  *Id.*  Defendant Sands never once asked why Defendant DeShazer was arresting Plaintiffs.  *Id.*

5.   Defendant Sands wrote in a report that believed that it was his employment role to preserve the peace, including the scene of Plaintiffs' arrest.  He believes that Defendant DeShazer did not use excessive force when arresting Plaintiffs.  <u>Exhibit 6</u>; Ex. 3. Sands Depo. 57:8-58:15; 78:2-7.

6.   Defendant DeShazer is 5'11, and was 230 pounds at the time of Plaintiffs' arrest.  Ms. Rice was twelve years old when she was arrested by Defendant DeShazer.  Ex. 1. DeShazer Depo. 81:8-21.  Ms. McCormick-Rice carries an oxygen tank for her asthma.  Ex. 2. McCormick-Rice Depo. 8:9-22.  Ms. McCormick-Rice is 53 years old. Ex. 2. McCormick-Rice Depo. 22:16-17.

7.   Defendant Sands kicked Ms. Rice while she was sitting on the ground and also while she was being handcuffed by Defendant DeShazer.  Ex. 4. Rice Depo.185:17-21.

8.   While watching the video of Plaintiffs' arrest (<u>Exhibit 5</u>), Defendant Sands testified that he was the first King Soopers security guard to reach the scene.  Ex. 3. Sands Depo. 65:17-21.

9.   Defendants accuse Ms. McCormick-Rice of playing the "race card."  Ex. 2. McCormick-Rice Depo. 282:7-10.

### III. STANDARD OF REVIEW

When moving for summary judgment, a party must show that they are entitled to judgment in their favor <u>beyond a reasonable doubt</u>.  *Brown v. Parker-Hannifin Corp.*, 746 F.2d 1407, 1411 (10th Cir. 1984) (quoting, *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 516 F.2d 33, 36 (10th Cir. 1975)).  Summary judgment should not be granted if <u>any</u> inference may be drawn that the non-moving party might recover.  *Id.*  ("[w]here different ultimate inferences may be drawn from the evidence presented by the parties, the case is not one for summary judgment")

10

(citing *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962)).  Courts evaluate the record in the light most favorable to the non-moving party.  *Reed v. McKune*, 298 F.3d 946, 949 (10th Cir. 2002).

Concerning the burden of proof, a movant need only point to those portions of the record, which demonstrate an absence of a genuine issue of material fact given the relevant substantive law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Where, as here, the nonmoving party will bear the burden of proof at trial, "Rule 56(e) . . . [then] requires the nonmoving party to go beyond the pleadings and by her own affidavits or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); *Mares v. Conagra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992); *Jencks v. Modern Woodmen of Am*., 479 F.3d 1261, 1264 (10th Cir. 2007).  Because Defendants cannot show beyond a reasonable doubt that no inference exists that Plaintiffs might recover, summary judgment is not warranted.

## IV. ARGUMENT

Defendants Sands' and King Soopers' liability at trial will be largely determined by evaluation of witness credibility.  After observing the arrest video, the jury will hear Ms. Rice's testimony and find that Defendant Sands kicked her while she was defenseless on the ground. Ex. 4. Rice Depo. 68:6-8; 181:25-187:23.  The jury will know that Defendant Sands kicked Ms. Rice due to racist intent or motivation since he specifically noted that Plaintiffs were acting belligerently because they approached only black customers inside the King Soopers.[2]  Exhibit 6. King Soopers has policies and/or actual practices that encourage its security guards to assist law

---

[2] Summary judgment is not ordinarily appropriate for settling issues of intent or motivation.  *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998).  Is Defendant Sands a racist, or are Plaintiffs playing the "race card?"  Ex. 2. McCormick-Rice Depo. 282:7-10.

enforcement.  Ex. 1. DeShazer Depo. 152:14-153:2.  Defendants Sands and King Soopers deny these allegations.  As such, these critical questions of fact must be determined by the jury for resolution of this dispute.  As such, summary judgment is entirely inappropriate in this case.

A.    **Defendants Sands and King Soopers are not entitled to summary judgment on Ms. Rice's claims.**

Plaintiffs bring their federal claims under Section 1983, which provides a remedy for constitutional violations committed by state or private actors under color of state law. *See, 42 U.S.C. § 1983 (2006)*. Specifically, Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.*  Thus, to establish a violation of Section 1983, Plaintiffs must allege that: (1) Defendants acted under color of state law to deprive them of a right, and (2) the right of which Defendants deprived them was secured by the Constitution or the laws of the United States. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).  The laws prohibiting law enforcement from using excessive force in the course of an arrest was clearly established on June 18, 1992.  *See, Cruz v. City of Laramie*, 239 F.3d 1183, 1188 (10th Cir. 2001)

i.    **Defendant Sands' willful conduct was attributable to the State based on the Joint Action test.**

"The traditional definition of acting under color of state law requires that the defendant in a [Section] 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotation marks omitted). Under such circumstances, it can be said that

the defendant's alleged constitutional violation is "fairly attributable to the state." *Id.* (quotation marks omitted).

Determining whether particular conduct constitutes state action "frequently admits of no easy answer." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974). Courts are to take a "flexible approach to the state action doctrine, applying a variety of tests to the facts of each case." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1448 (10th Cir. 1995). The Tenth Circuit has recognized the applicability of four tests for determining whether state action exists. *Id.* First, the close nexus test asks "'whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson*, 419 U.S. at 351). Second, the symbiotic relationship test finds state action when "the [S]tate has 'so far insinuated itself into a position of interdependence' with the private party." *Id.* (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 [1961].) Third, under the joint action test, the court will find state action if "a private party is a 'willful participant in joint activity with the State or its Agents.'" *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 787, 764 [1966] [further internal quotation marks omitted]). Finally, the public functions test finds state action when "a private entity . . . exercises 'powers traditionally exclusively reserved to the State.'" *Id.* (quoting *Jackson*, 419 U.S. at 352).

State action is present if a private party is a "willful participant in joint action with the State or its agents." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1454 (10th Cir. Utah 1995) quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).  The focus of the joint action test is not on long-term interdependence between the state and a private entity. *Id.*  Instead, courts examine whether state officials and private parties have acted in concert in effecting a particular

deprivation of constitutional rights. *Id. citing Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989), *cert. denied*, 493 U.S. 1056 (1990); *Sims v. Jefferson Downs Racing Ass'n*, 778 F.2d 1068, 1076-80 (5th Cir. 1985).

In this case, Defendant Sands was undisputedly a willful participant in the arrest of Plaintiffs.   Defendant Sands ran from the King Soopers entrance way, in part, because he believed that it was his duty to protect the peace of the King Soopers' parking lot.  Ex. 3. Sands Depo. 78:2-7; 80:1-12.  Without any prompt from Defendant DeShazer, Defendant Sands asked twice to assist with Plaintiffs' arrests.  Ex. 1. DeShazer Depo. 95: 12-16.  At no time prior to Defendant Sands asking if he could assist in the arrests did Defendant DeShazer indicate he needed any assistance in arresting Plaintiffs.  *See, generally, id.*  Notwithstanding Defendant Sands' testimony stating that he has no responsibility to a situation once law enforcement arrives, Defendant Sands nonetheless participated with Plaintiffs' arrests.  Ex. 3. Sands Depo. 61:1-6.  Defendant Sands independently (and incorrectly) believed that Plaintiffs were combative towards Defendant DeShazer.   Exhibit 6*; Ex. 3. Sands Depo. 57:8-58:15.  Defendant Sands' belief that Plaintiffs were combative is unworthy of belief as Plaintiffs were neither combative nor trying to flee - they were simply hugging each other.  Ex. 3. Sands Depo. 55:20-24

The case law addressing private citizens acting in concert with police officers during arrests supports a finding of Defendant Sands' joint action.  Notably, the Tenth Circuit has applied the joint action test in several cases involving allegations that private citizens acted in concert with police officers in making arrests. *Id.*   In both *Carey v. Continental Airlines Inc*., 823 F.2d 1402 (10th Cir 1987), and *Lee v. Town of Estes Park*, 820 F.2d 1112 (10th Cir. 1987), the Tenth Circuit found that citizens who simply make complaints to police officers that resulted

14

in arrests were not state actors.  *Id.*  In comparison, Defendant Sands' involvement in this case far exceeds a nominal complaint to the police, making this case factually distinguishable from the cases of *Carey* and *Lee.*  Defendant Sands did not simply call the police, which resulted in excessive force used against Plaintiffs – Defendant Sands himself applied excessive force during an arrest that he essentially volunteered to participate in.  Defendant Sands' conduct is willful and egregious, and supports a finding of joint action with the state.

**ii.    Defendant Sands was not acting at the behest of Defendant DeShazer.**

Defendants Sands and King Soopers argue that even if Defendant Sands is considered a joint actor with Defendant DeShazer, Defendant Sands is entitled to qualified immunity because Defendant Sands in good faith relied upon the order of law enforcement.  *Defendants' Motion for Summary Judgment, pgs. 11-12.*  This argument is not factually supported.  As discussed above, Defendant Sands is not entitled to this qualified immunity defense because the undisputed facts demonstrate Defendant Sands was not acting at the <u>behest</u> of Defendant DeShazer's orders. *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1180 (10th Cir. 2003) (emphasis added).

To the contrary, Defendant Sands independently asked Defendant DeShazer twice if he needed assistance in arresting Plaintiffs.  Ex. 1. DeShazer Depo. 95: 12-16.  At no time prior to Defendant Sands asking if he could assist in the arrest did Defendant DeShazer indicate he needed any assistance whatsoever.  *See, generally, id.*  As a security guard, Defendant Sands has no responsibility to respond to a situation once law enforcement has arrived, as here.  Ex. 3. Sands Depo. 61:1-6.  Notwithstanding, Defendant Sands voluntarily interjected himself into Plaintiffs' arrest.  Ex. 1. DeShazer Depo. 95:1-21; Ex. 3. Sands Depo. 57:12-22; 78:8-19.  As he approached the scene of Plaintiffs' arrest, Defendant Sands independently and wrongly believed

that Plaintiffs were combative towards Defendant DeShazer.   Exhibit 6; Ex. 3. Sands Depo.

57:8-58:15.  Certainly, Defendant DeShazer gave no authoritative order or an urgent command

to Defendant Sands.  Rather, the facts demonstrate that Defendant DeShazer merely acquiesced

to Defendant Sands' strong suggestions that he be allowed to assist with Plaintiffs' arrest.  There

were was no exigent circumstances that would require Defendant Sands to act at the "behest" of

Defendant DeShazer, as Defendant DeShazer was an armed and trained law enforcement officer

trying to arrest a twelve-year-old girl and an infirm woman on an oxygen nebulizer.  *See,*

*Marshall,* 345 F.3d at 1180.  At a minimum, a factual dispute exists as to whether Defendant

Sands was performing an arrest of Ms. Rice at the direction Defendant DeShazer.

### iii.    Defendant Sands is not entitled to qualified immunity because he assisted with Ms. Rice's arrest to further his own unlawful purpose.

Not mentioned in Defendants' Motion for Summary Judgment, private defendants who

allegedly conspire with public officials to deprive another of constitutional rights are not entitled

to qualified immunity under section 1983. *Warner v. Grand County*, 57 F.3d 962, 966 (10th Cir.

Utah 1995) (Eleventh Circuit Citation and quotations omitted).  Private defendants permitted to

assert qualified immunity are those who fulfill duties under a government contract or act

pursuant to a court order.  *Id. (citations omitted).*  For instance, a physician under court order to

perform a vaginal cavity search is entitled to qualified immunity.  *Id. (citations omitted).*

Private defendants who invoke state law in pursuit of private ends are not entitled to

qualified immunity. *Warner*, 57 F.3d at 966 (citation omitted).  By way of example, a private

defendant who conspired with a district attorney to indict a co-worker for perjury in order to gain

control of a private cooperative is not entitled to qualified immunity; or, a private landlord who

enlisted the services of police officer to effectuate an unconstitutional eviction is not entitled to qualified immunity.  *Id.*

Defendants Sands falls into the latter category of those who would not be entitled to qualified immunity because he sought his own, private and unconstitutional end.  Clearly, Defendant Sands was not arresting Plaintiffs pursuant to a government contract or court order.  Plaintiffs have established facts that suggest that Defendant Sands was arresting (and kicking) Ms. Rice because Defendant Sands believed that Plaintiffs were combative with Defendant DeShazer.  Ex. 4. Rice Depo. 66:7-17; 68:6-8; 181:25-182:25; 184:17-189:10; Exhibit 6. Defendant Sands specifically noted that Plaintiffs acted belligerently inside the King Soopers because they were *approaching only other black customers.*  Exhibit 6.  In this respect, Defendant Sands associated Plaintiffs' protest of race discrimination and seeking assistance from black customers with belligerency.

A jury could infer that Defendant Sands found it offensive that Plaintiffs were protesting race discrimination because Defendant Sands himself harbors discriminatory animus (Defendant Sands took no action to investigate or assist with Plaintiffs' claims of race discrimination).  A jury could also conclude that Defendant Sands acted with discriminatory intent because he kicked Ms. Rice while she was defenseless, sitting on the ground being handcuffed.  Ex. 4. Rice Depo. 185:17-21.   Notwithstanding his actions to the contrary, as a security guard, Defendant Sands has no responsibility to a situation if there are police at the scene.  Ex. 3. Sands Depo. 61:1-6.  Therefore, Defendant Sands violated King Soopers' policy and/or actual practice when he assisted Defendant DeShazer's unlawful arrest of Plaintiffs.  Finally, Defendant Sands did not observe any violation of law that would suggest that Defendant DeShazer should have arrested

Plaintiffs.  Ex. 3. Sands Depo. 62:24-63:19.  A jury could reasonably conclude that Defendant Sands was motivated by his own unlawful purpose, and not any concern of violation of law or officer safety, when he suggested to Defendant DeShazer that he be permitted to assist in Plaintiffs' arrests.[3]

### iv.    Defendants Sands and DeShazer acted in concert to injure Ms. Rice during her arrest.

To state a section 1983 conspiracy claim, a plaintiff must demonstrate the alleged conspirators had a meeting of the minds and engaged in concerted action to violate the plaintiff's constitutional rights. *Montoya v. Bd. of County Comm'rs*, 506 F. Supp. 2d 434, 443 (D. Colo. 2007) *citing Gallegos v. City & County of Denver*, 984 F.2d 358, 364 (10th Cir. 1993). A conspiracy claim may rest upon circumstantial evidence.  *Id.*   Plaintiff must provide sufficient facts to support the inference that some prearranged plan or joint action existed between the conspirators to engage in all of the alleged conspiratorial activities.  *Id. (citations omitted).* Participation in the act which caused the constitutional deprivation is evidence of conspiracy. *See, generally, Beedle v. Wilson*, 422 F.3d 1059, 1071 (10th Cir. 2005).  When a plaintiff seeks to prove state action based on a conspiracy theory, "a requirement of the joint action charge . . . is that both public and private actors share a common, unconstitutional goal."  *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1126 (10th Cir. 2000).

Defendant Sands acted in concert with Defendant DeShazer because he kicked Ms. Rice while she was defenseless, sitting on the ground being handcuffed by Defendant DeShazer.   Ex.

---

[3] A private individual who performs a government function pursuant to a state order or request is entitled to qualified immunity if a state official would have been entitled to such immunity had he performed the function himself.  *Warner v. Grand County*, 57 F.3d 962, 967 (10th Cir. 1995).  Let there be no doubt in this matter – all criminal charges against Plaintiffs were dismissed.  Ex. 1. DeShazer Depo. 26:23-27:2; Ex. 2. McCormick-Rice Depo. 245:5-8.

4. Rice Depo.185:17-21).  Defendants Sands and DeShazer shared a common goal and means of using excessive force against Ms. Rice during her arrest.  Thereafter, Defendant Sands wrote a report praising Defendant DeShazer's arrest, specifically noting that in Defendant Sands' opinion, Defendant DeShazer did not use excessive force.  Exhibit 6.  In the report, Defendant Sands states that he never heard Defendant DeShazer call Plaintiffs "fucking niggers" even though he was not present during the interaction between Plaintiffs and Defendant DeShazer. Exhibit 6; Ex. 3. Sands Depo. 27:16-24; 19:14-20:17.   Defendant Sands believes that Defendant DeShazer did not use excessive force during Plaintiffs' arrests, notwithstanding the video to the contrary and the complete dismissal of all criminal charges against Plaintiffs.  Ex. 3. Sands Depo. 57:8-58:15; Exhibits 6 & 7; Ex. 1. DeShazer Depo. 26:23-27:2; Ex. 2. McCormick-Rice Depo. 245:5-8.  After Plaintiffs' arrest, Defendant DeShazer approached other individuals stating that everyone needed to get their facts straight.  Ex. 2. McCormick-Rice Depo. 219:5-10.

Based upon these facts, which includes Defendants Sands' and DeShazer's conduct after the arrest, a jury could conclude that Defendants Sands and DeShazer acted in concert when they injured Ms. Rice.  Also, a jury could infer from Defendant Sands' report that Defendant Sands was attempting to cover up Defendant DeShazer's use of excessive force against Plaintiffs.  A jury could find that Defendants Sands and DeShazer share camaraderie because they are both affiliated with law enforcement   As such, there is sufficient circumstantial evidence to support that Defendants Sands and DeShazer conspired to deprive Plaintiffs of their federally protected rights.  At the very least, this is an issue for the jury to decide.

**v.        Defendant Sands committed battery against Ms. Rice.**

It is surprising in the least that Defendants are suggesting to the Court that Ms. Rice is not claiming that she was kicked by Defendant Sands.  Ms. Rice clearly identified Defendant Sands as the King Soopers security guard that kicked her.  Ms. Rice's deposition testimony could not be any clearer:

> Q.  We're going to look at Exhibit J, and then we'll go back and you tell me what part of the film was taken out, okay?  And where he kicked you, okay? You tell me, Stop right there.  That's where it was. And it was just one kick, right?
> A.  Yes.
> Q.  When you say "medium kick," show me how he did it.
> A.  Like that.
> Q.  Like that?
> A.   But you can't really see because the tall security guard is sort of in line with him so you can't really --
> Q.  See the kick?
> A.  Yes.
> Q.   Do you see in this video Mr. Sands coming over and putting his hand on the back of Officer DeShazer?   Do you remember that?
> A.  Yes, I do.
> Q.  Did the kick happen just about that time?
> A.   Yes, it was, because DeShazer was on the ground trying to put me in cuffs. And then here is Sands leaning on him and here goes his foot like that.
> Q.  Show me that kick again.
> A.   Okay.  His foot goes like that.  While he's leaning on DeShazer his foot goes like that.  Then when I sit up by DeShazer's wheel and I try to sit up that's when DeShazer pushed me back down.
> Q.  Mr. Sands didn't kick you at that point, did he?
> A.  No, he didn't.
> Q.  Just that one kick?
> A.  Yes.
> Q.   And you don't see it in the video.  The kick that you've shown me is maybe -- the kick is about eight inches.  Would that be about right?
> A.   Yes, 'cause here's DeShazer.  I'm right here on the ground.  This is him like that.
> Q.  You just showed me a kick about eight inches?
> A.  Yes.
> Q.   Okay.  Let's look at the video and you tell me.  Say, That's it.  Right there is where they took part of it out.  Cassidy, has the kick already occurred?
> A.  Oh, yes.
> Q.  I'm sorry.
> A.  I thought we were going --

Q.  I'll go back.  I want you to tell me where the kick was.
A.   It was when he was running up and approaching him.  That's when I was between the both cars.
Q.  Let me go back then.  It was right when --
A.  Yeah.
Q.  Here they go.  They are running down.  You tell me just right at the point that you think this has been edited and he kicked you.
A.   You see when Jeff gets in line with him for a little bit?  You might have to rewind it.
Q.  It's already happened?
A.   Yes.  When he gets in line.  Okay.  You can go forward.  Right when they both get lined up is when it happens 'cause it's real hard to see his foot.  Right when they get lined up is where it happens.  It's like a quick second right there.
Q.  Right there?
A.  Right there, 'cause they are lined up.
Q.  That's where he came over and he kicked you?
A.  Yes.
Q.  That's at 21:50:45.  And did you get a bruise in your ribs?
A.  No.

*Ex. 4. Rice Depo. 66:7-17; 68:6-8; 181:25-187:23.*

Although Ms. Rice did not see Defendant Sands' face, she clearly saw and identified the blue pants from Defendant Sands' King Soopers' security guard uniform as she was being kicked.  Ex. 4. Rice Depo. 188:22-189:4.  Any argument based on Ms. Rice's failure to recognize Defendant Sands at the time of the arrest is dubious.  There is absolutely no dispute that Defendant Sands was the person in the video who kicked Ms. Rice.  Defendant Sands testified that he was the first King Soopers' security guard who arrived at the scene of Plaintiffs' arrest.  Ex. 3. Sands Depo. 65:17-21.  The first security guard that arrived at the scene was the only possible person who could have kicked Ms. Rice.  Exhibit 6.  Defendants' argument that they are entitled to summary judgment on the battery claim because Ms. Rice did not correctly identify Defendant Sands is absurd given her clear testimony that she was able to identify him by his blue uniform as she was being kicked.   Further, based on Defendant Sands' testimony, the

video at time index 21:50:45[4] puts Defendant Sands in the exact location where he could kick Ms. Rice.  Exhibit 6; Ex. 3. Sands Depo. 65:17-21.  Clearly, there are sufficient facts to support Ms. Rice's battery claim against Defendant Sands.  At a minimum, whether or not Defendant Sands kicked Ms. Rice is a disputed issue of material fact to be determined by the jury.

**vi.      C.R.S. § 16-3-202 is factually and legally inapplicable to Plaintiffs' litigation.**

Defendants argue that C.R.S. § 16-3-202 confers immunity upon Defendant Sands. However, this state statute cannot confer immunity for Plaintiffs' federal claims.  The United States Supreme Court has held that a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted because the application of the state immunity law would thwart the congressional remedy which of course already provides certain immunities for state officials.  *Felder v. Casey*, 487 U.S. 131, 139 (1988).

Notwithstanding the legal inapplicability to Plaintiffs' federal claims (Plaintiffs' acknowledge there is state law claim of battery against Defendant Sands), this immunity defense is not available because it is not factually supported.  C.R.S. § 16-3-202(3) provides that "[a] person commanded to assist a peace officer in making an arrest shall not be civilly or criminally liable for any *reasonable* conduct in aid of the officer or for any acts expressly directed by the officer." (emphasis added). Defendant Sands' conduct is by no means reasonable.  Defendant Sands kicked a twelve-year-old girl while she was on the ground being handcuffed by a police officer.  *Ex. 4. Rice Depo. 66:7-17; 68:6-8; 181:25-187:23.*  Additionally, there exists a factual dispute as to whether Defendant DeShazer expressly directed assistance from Defendant Sands, or whether Defendant DeShazer acquiesced to Defendant Sands' insistence that he assist with

---

[4] A careful review of Plaintiffs' arrest video shows Defendant Sands' kick of Ms. Rice at time index 21:50:45.

Plaintiffs' arrest.  C.R.S. § 16-3-202(3) is legally inapplicable and factually unsupported, and

Defendants therefore are not entitled to summary judgment on this basis.

**vii.    As a private corporation, Defendant King Soopers is liable for the constitutional violations and torts committed by Defendant Sands.**

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court held that a

municipality cannot be held liable under 42 U.S.C. § 1983 merely on account of the unauthorized

acts of its agents.  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1215 (10th Cir. 2003).  To be liable,

the municipality must have had an "official municipal policy of some nature," that was the

"direct cause" or "moving force" behind the constitutional violations. *Id. citing City of Oklahoma*

*City v. Tuttle*, 471 U.S. 808, 820, 85 L. Ed. 2d 791, 105 S. Ct. 2427 (1985); *Pembaur v. City of*

*Cincinnati*, 475 U.S. 469, 480-85, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986) (finding municipal

liability even when the "policy" was evinced by a single incident).

When the execution of a government's policy or custom deprives or violates the

constitutional rights complained of by a plaintiff, the governmental entity may be responsible for

the injury under § 1983 [citing *Monell*].  *Id.*  A municipal policy or practice must be the "direct

cause" or "moving force" behind the constitutional violation.  *Id.*   Although the Supreme Court's

interpretation of § 1983 in *Monell* applied to municipal governments and not to private entities

acting under color of state law, case law from the Tenth Circuit has extended the *Monell* doctrine

to private § 1983 defendants[5].   *Dubbs,* 336 F.3d at 1215 citing *Dickerson v. Leavitt Rentals,* 995

F. Supp. 1242, 1247 (D. Kan. 1998), aff'd. 153 F.3d 726 (10th Cir. 1998), cert. denied, 525 U.S.

1110, 142 L. Ed. 2d 781, 119 S. Ct. 882 (1999); *DeVargas v. Mason & Hanger-Silas Mason Co.,*

---

[5] Not all circuits follow the Tenth Circuit.  Private corporations may be vicariously liable under § 1983 for acts of its employees.  *Carr v. Chicago*, 669 F. Supp. 1418, 1420-1421 (N.D. Ill. 1987); *Hutchison v. Brookshire Bros., Ltd.*, 284 F. Supp. 2d 459, 472-473 (E.D. Tex. 2003) (specifically rejecting *Monell's* application to private corporations).

*Inc.*, 844 F.2d 714, 722-23 (10th Cir. 1988); see also *Jackson v Illinois Medi-car Inc.*, 300 F.3d 760, 766 (7th Cir. 2002); *Burke v. North Dakota Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 729 (4th Cir. 1999); *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992); *Rojas v. Alexander's Dep't Store*, 924 F.2d 406, 408-09 (2d Cir. 1990).

A private actor such as Defendant King Soopers "cannot be held liable solely because it employs torfeasor Defendant Sands - or, in other words . . . cannot be held liable under § 1983 on a respondeat superior superior theory." *Smedley v. Corr. Corp. of A*m., 175 Fed. Appx. 943, 946 (10th Cir. 2005) citing *Monell*, 436 U.S. at 691 (emphasis in original). Therefore, in order to hold Defendant King Soopers liable for the alleged tortious acts of its agents under § 1983, Plaintiffs must show that Defendant King Soopers directly caused the constitutional violation by instituting an official policy of some nature, that was the direct cause or moving force behind the constitutional violations. *See, id.* (quotations omitted).

Defendant King Soopers' liability to Plaintiffs is not solely based on Defendant Sands' employment as a security guard, but rather on King Soopers' security guard policies. Defendant Sands, in a statement prepared after Plaintiffs' arrest, stated that as a member of King Sooper' security, "it was his duty to preserve the peace at the scene." Ex. 3. Sands Depo. 78:2-7; 80:1-12. Moreover, based on Defendant Sands' conduct when arriving at the scene of Plaintiffs' arrest, Defendant DeShazer believed it was Defendant King Soopers' policy that its security assists in arrests upon request by law enforcement. Ex. 1. DeShazer Depo. 152:14-153:2. Defendant King Soopers had two polices was the moving force behind Defendant Sands' constitutional deprivation of Ms. Rice. The policy of King Soopers' security to "preserve the

peace" on King Soopers' premises was the direct cause of Defendant Sands running from King

Soopers' entranceway to the scene of Plaintiffs' arrest.  Defendant King Soopers must accept

responsibility of the constitutional violations caused by its employees during execution of King

Soopers' security policies.

While Plaintiffs are willing to concede that Defendant King Soopers is not liable for

Officer DeShazer's acts, it is liable for the state-law based torts contained in the Complaint

caused by Defendant Sands.  Based on the doctrine of *respondeat superior*, King Soopers is

liable for unlawful acts of Defendant Sands which occur in the course and scope of his

employment.  *Arnold by & Through Valle v. Colorado State Hosp., Dep't of Institutions*, 910

P.2d 104, 107 (Colo. App. 1995).  Under the theory of *respondeat superior*, the question of

whether an employee is acting within the scope of the employment is a question of fact.  *Raleigh

v. Performance Plumbing & Heating, Inc*., 130 P.3d 1011, 1019 (Colo. 2006).  As previously

stated, Defendant Sands kicked Ms. Rice during his assistance of Plaintiffs' arrest.  Ex. 4. Rice

Depo. 68:6-8; 181:25-187:23.  Therefore, it is a question of fact as to whether Defendant King

Soopers is liable for the torts of its employees.  Summary judgment is inappropriate as to

Defendant King Soopers.

### iix.    Defendants Sands' use of force was objectively unreasonable.

Defendants' Motion for Summary Judgment does not argue whether Defendants' Sands

kick of Ms. Rice was objectively reasonable.  When a defendant raises an issue of qualified

immunity, courts must determine whether the conduct was objectively reasonable in light of

clearly established law at the time it took place." *Marcus v. McCollum*, 394 F.3d 813, 823 (10th

Cir. 2004).  The Fourth Amendment forbids unreasonable seizures, including the use of

excessive force in making an arrest.  *Casey v. City of Federal Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007).  To determine whether the force used in a particular case is excessive "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id. quoting Graham v. Connor*, 490 U.S. 386, 396 (1989).

The ultimate question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them.  *Id.*  (citations and quotations omitted).  This determination requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  *Id.*  (citations and quotations omitted).

Defendant Sands did not raise the reasonableness of his use of force against Ms. Rice in all likelihood because it is clearly established that a law enforcement officer may not use force on a compliant suspect already under the officer's control and not resisting detention or trying to flee. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314-15 (10th Cir. 2002)(holding that a plaintiff's allegations that an officer who was arresting him at a mall for suspected credit card fraud pushed him ten feet into a store window and then pushed his arm up into the middle of his back while handcuffing him, despite the fact that he was passively cooperating, were sufficient to support an excessive force claim); *Dixon v. Richer*, 922 F.2d 1456, 1462-63 (10th Cir. 1991)(holding that choking a suspect who had been frisked and had his hands on a police vehicle and then hitting him with a flashlight and beating him when he was not resisting constituted excessive force).

As previously described at length, Ms. Rice was kicked in the ribs by Defendant Sands while she was defenseless and being handcuffed by Defendant DeShazer.  Ex. 4. Rice Depo. 68:6-8; 181:25-187:23.  Under these circumstances (if not ever), it not objectively reasonable to kick a twelve-year-old girl in the ribs while she is being handcuffed by an armed law enforcement officer.  Ms. Rice was not trying to flee, was passively cooperating, and other Aurora law enforcement arrived moments after Defendant Sands kicked Ms. Rice.  Defendant Sands' conduct is reprehensible and egregious, thus a far cry from objectively reasonable.  Even though not raised in Defendants' Motion for Summary Judgment, Defendant Sands' conduct was not objectively reasonable, and therefore he is not entitled to qualified immunity.

**ix.    Plaintiffs concede Defendants' Motion for Summary Judgment in regards to Ms. McCormick-Rice's claims against Defendants Sands and King Soopers.**

Plaintiffs move the Court for dismissal of Ms. McCormick-Rice's (not Ms. Rice's) claims against Defendants Sands and King Soopers.

## V. <u>CONCLUSION</u>

While employed as a King Soopers security guard, and while participating in Plaintiffs' arrest, Defendant Sands kicked Ms. Rice.  Defendant Sands' willful participation with Plaintiffs' arrest sustains a finding of joint action with the state.  Defendant Sands was not ordered to assist with Plaintiffs' arrest, but rather he asked twice to participate.  Ms. Rice was being handcuffed by Defendant DeShazer at the time of Defendant Sands' kick, and was not posing any threat of escape or resistance - supported by the complete dismissal of all criminal charges, as well as the video of the incident.  Defendant Sands is not entitled to qualified immunity, and King Soopers' is liable for Defendant Sands' conduct based on its policies and/or actual practices.  This case

should proceed to trial.  It is respectfully requested that this Court deny Defendants' Motion for Summary Judgment in regards to Ms. Rice.

Respectfully submitted this 23rd day of May, 2008.

KILLMER, LANE & NEWMAN, LLP

s/ David A. Lane
_____
David A. Lane
Qusair Mohamedbhai
The Odd Fellows Hall
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000
(303) 571-1001 (FAX)
*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of May, 2008, a true and correct copy of the foregoing **PLAINTIFFS' RESPONSE TO DEFENDANT KING SOOPERS' AND EARNEST SANDS' MOTION FOR SUMMARY JUDGMENT** was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Peter R. Morales
Aurora City Attorney's Office
15151 E Alameda Pkwy., Suite 5300
Aurora, CO  80012
pmorales@auroragov.org
*Counsel for Defendant Charles Deshazer in his "official capacity"*

David R. Osborne
Hamilton & Faatz, PC
1600 Broadway, Suite 500
Denver, CO  80202
drosborne@handf.com; tmoore@handf.com
*Counsel for Defendant Charles Deshazer in his "individual capacity"*

Jonathan Streelman
Stephen Higgins
White & Steele, PC
950 17th Street, Suite 2100
Denver, CO 80202
#303-824-4402
jstreelman@wsteele.com
shiggins@wsteele.com
*Counsel for Defendants Dillon Companies, Inc. d/b/a King Soopers, Inc. and* Earnest Sands

s/ Qusair Mohamedbhai
_____
Qusair Mohamedbhai